## HALL, PLAINTIFF IN ERROR V. STEPHENS.

1. **Devise**: FAMILY. A devise to "H. S. and family" is a devise to H. S. and his wife and children.

2. **Husband and Wife**: ESTATE IN LAND. Both at common law and under the statute (Gen. Stat. 1865 p. 443 ? 12) husband and wife, to whom a devise is made, take as joint tenants and not as tenants in common; and when a devise is made to husband and wife and other persons, the husband and wife together represent a single unit or integer of legal identity, and together take a share equal to the share of each of the others.

3. **Devise**: FAMILY: EVIDENCE. When a devise is to "H. S. and family," evidence will be received to ascertain who constitute the family.

4. **Husband and Wife's Joint Estate**: EXECUTION. The interest vested in the husband by such a devise is vendible on execution against him; but the purchaser buys subject to the wife's right, in case she survives her husband, to take the entire estate.

5. **Statute Construed.** The foregoing conclusion is not affected by the statute (Wag. Stat. p. 935 ? 14), the only purpose of which is to prevent a sale under execution against the husband when the wife holds the fee in her own right.

6. **Attachment**: EXECUTION: INTERVENING LEGISLATION. An execution sale in an attachment case relates back to the date of the levy of the attachment, and creates a charge as of that date. No intervening legislation can affect the rights of the parties.

*Error to Cass Circuit Court.*—HON. FOSTER P. WRIGHT, Judge.

*A. Comingo and Hall & Givan* for plaintiff in error.

1. The devise to Hiram Stephens and his family, transmitted the legal title in the land to said Stephens. The attempted devise is void for uncertainty. *Arthur v. Weston,* 22 Mo. 378. Bequests to a "family" have often been held void. *Harland v. Trigg,* 1 Brown, Chanc. Cases, 142; *Doe v. Joinville,* 3 East 172. For stronger reasons a devise should be held void, if attended with the same degree of uncertainty.

2. If the devise to the "family" in this case is void for

uncertainty, it follows that parol testimony showing who constituted the family of Hiram Stephens, at the time of the testator's death, was incompetent. The word family implies an entire household, husband, wife, children, domestics—in a word, all who live on the same premises in subjection to one head. Unless the generally accepted signification of the word, as used in the codicil, is restricted in order to avoid an absurdity that would result from this construction, the devise in this case would have been as beneficial to the servants and slaves of Hiram Stephens, had he had any at the death of the testator, as it could have been him.

3. *Barns v. Patch* 8 Ves. 604, and *Wood v. Wood* 3 Hare 65 were cases of bequests not devises.

*R. O. Boggess* for defendant in error.

1. The family consisted of the father, mother and six children and they all took under the codicil. Bouv. Law Dic.; Webster's Dic.; 2 Sto. Eq. §§ 1062, 1065 b, 1065 c, 1065 d, 1071, 1072. *Whaley v. Whaley* 50 Mo. 577 ; *Woods v. Woods*, 1 Mylne & Cr. 401 ; *MacLerath v. Bacon*, 5 Ves. Jr. 159 ; *Whiting v. Whiting*, 4 Gray 236 ; *Cosby v. Ferguson*, 3 J. J. Mar. 264.

2. It was proper to admit extraneous evidence to show who composed the family of Hiram Stephens when the codicil was made and when the testator died. Broom's Legal Max. (6 ed.) 599, 602 ; *Hamilton v. Pitcher*, 53 Mo. 334 ; 1 Green Ev. § 287, note 1; Ib. 289, note 6; *Yantis v. Yourie*, 10 Mo. 669 ; *Cox v. Beltzhoover*, 11 Mo. 142 ; *King v. Tempel*, 48 Mo. 71 ; *Scott v. Bailey*, 23 Mo. 140 ; *Garrett v. Ferguson*, 9 Mo. 125 ; *Musser v. Johnson*, 42 Mo. 74 ; *Kronenberger v. Hoffner*, 44 Mo. 185 ; *Orrick v. Bower*, 29 Mo. 210.

3d. Hiram Stephens and his wife took one-seventh of the land embraced in the codicil, as tenants by entireties; while the six children took the other six-sevenths thereof as tenants in common. Freeman on Co-ten. and Part. secs. 63 to 76. Doe. *ex dem. Ross v. Garrison*, 1 Dana 35 ; *Rogers*

*v. Grider*, 1 Dana 243; *Banton v. Campbell*, 9 B. Mon. 594; *Gibson v. Zimmerman*, 12 Mo. 385; *Garner v. Jones*, 52 Mo. 68; Wag. Stat. 1352 § 12.

4th. Hiram Stephens had no interest in the land which was vendible under execution against him. 1ᴬ Mo. 385; 52 Mo. 68; *Wannall v. Kem*, 51 Mo. 150; 2 Wag. Stat. 935 Sec. 14; Rorer on Judicial Sales §§ 549, 800; *Chandler v. Cheney*, 37 Ind. 408; Freeman Coten. and Part. secs. 63 to 76.

SHERWOOD, C. J.—" I, Benjamin Stephens, of Boone county, Kentucky, having made a codicil to my former will, I now make this additional one : I give to Hiram Stephens and family, the tracts of land I have lately purchased of Coughenour & Finney; and further, it is my wish, and I appoint and constitute John Brady as my lawful agent over said lands, to be managed for their benefit; and I forbid the sale of said lands without orders from me or my agent;" are the words which gave origin to the present action of ejectment. Since the cause came here on error, the original defendant, Hiram Stephens, has died; that fact has been suggested to plaintiff, and the present defendants, wife and children of the decedent, waiving *sci fa*, which otherwise would have issued, have entered herein, by consent, their voluntary appearance. April 14, 1855, is the date of the codicil. The testator died a few days thereafter. The plaintiff's claim is based on a sale under special execution in 1869, the attachment having been levied January 1st, 1866, on the property in suit as that of the former defendant, and judgment rendered October 4th of the year last aforesaid. The trial court adjudged to recover the undivided one-eighth of the premises in controversy. The plaintiff, however, claims that the recovery should have been for the whole tract, while for the defense it is insisted that judgment should have gone for defendants. As will be hereafter seen, the whole question hinges upon the proper force and effect of the codicil, considered with reference to certain statutory provisions.

1. After no little research, the opinion is entertained that not only did the person named become the recipient 1. DEVISE: family. of the fee, but that his wife and children became partakers therein also. In Wylde's case (6 Co. 16) it was rule ' that a devise to one and his children, the latter living a, ac date of the will, carried an estate in joint tenancy. 2 Redf. L. W. 14. In re Terry's will, (19 Beav. 580), it was held that the word "*family*," is "*children*," unless some circumstance, either in the will or in the situation of the parties, prevent such construction, Sir John Romilly, M. R., remarking : " I think it a safe rule to follow the ordinary import of words as used in ordinary conversation." In that case the children were *orphans*, and consequently no question arose as to whether the word " family " possessed a sufficiently comprehensive significance to include also parents. In *Barnes v. Patch*, 8 Ves. 604, the words " remainder of my estate to be equally divided between A's and B's families," were held to embrace the respective children of those families to the the exclusion of the parents, B having pre-deceased the testator. The context of the will, as well as the words themselves, would seem to have warranted the given construction.

In *Exrs. of White v. White*, 30 Vt. 338, where the will gave to the son of the testator " $1,500 for the support of himself and family, and for no other purpose," it was held that the word " family " would include the *wife and children* of the testator's son. The *intention* of the testator, it is agreed on all hands, should be the pole star by which courts should steer in construing devises, subject, however, to a certain degree of control, owing to technical rules and the intrinsic force of technical expressions. 4 Kent, 537. In the absence of technical terms, the general rule as expressed in all cases regarded reliable, undoubtedly is : 1. That words must have their ordinary, popular signification, technical terms excepted, unless, in the context, or subject-matter of the will, something clearly and unequiv-

ocally indicates a different use. 2. Where words are capable of a natural, and also a secondary and unusual meaning, preference is to be given to the former method of interpretation. 2 Sto. Eq. Jur. § 1074 b. Proceeding, no doubt, on this *sensible* theory, where the bequest was to " cousins" *simpliciter*, it was held, in the absence of anything explanatory of the meaning of the testator, that only *first cousins*, there being those answering that description, were intended; the Lord Chancellor (Lord Cranworth), after a good deal of examination and discussion at the bar, remarking: " I think that if a testator says no more than he gives to ' cousins,' he must be taken to mean *first* cousins. That will be a practical construction, and one by which the parties entitled, will be readily ascertained; it coincides, too, with ordinary experience, for when a person speaks of cousins he generally means first cousins, the children of an uncle or aunt." *Stoddart v. Nelson*, 6 D. G. M. & G. 68. Whereupon Mr. Justice Story remarks: " It seems to us this view, as a general exposition of the difficulty, is extremely satisfactory." 2 Sto. Eq. Jur. § 1065 c.

In the English courts, bequests to the family of one have frequently been held void for uncertainty. *Harland v. Trigg*, 1 Brown Ch. Cas. 142; *Doe v. Joinville*, 3 East 172; *Robinson v. Waddelow*, 8 Sim. 134. But that line of decision is not so common as formerly, and it is said in English works, 2 Jarm. on Wills, 87 (Ed. 1861): " It should seem that a gift to the family, either of the testator himself, or of any other person, will not be held void for uncertainty, unless there be something special creating that uncertainty. The subject-matter and the context of the will are to be taken into the account," and the bequest upheld, if it can be fairly made out what the testator intended by the word family. 2 Redf. L. W. 71, § 5. In *Doe v. Smith*, 5 M. & Selw. 126, where the devise was " the interest of all my land property * * * to my wife; * * * after the demise of my wife, to my brother, W.

R., during his natural life, * * * and after his decease unto my sister C's family, to go in heirship forever," it was held, in an action of ejectment, that the estate passed in entirety to the eldest son and heir of C. There are other English cases of this sort, where bequests to a family have been held as presumptively intended for the heirs of such family. *Counden v. Clerke*, Hob. 29; Chapman's Case, Dyer 333 b.; *Wright v. Atkyns*, 17 Ves. 255; *Griffiths v. Evan*, 5 Beav. 241. This is doubtless attributable in the main to the law of primogeniture and the policy of the law incident to keeping landed estates in a particular line at descent. 2 Redf. L. W. 72. But as we have in this country no law of primogeniture, and as all estates descend to all the children in equal division, it would seem to follow that were the same line of argument pursued as in England, by parity of reasoning, children would take here in response to the word family, in like manner as the heir at law does in that country, as the legal exponent of that term. In *Wright v. Atkyns*, 1 Turn. & Russ. 143, Lord Eldon, when speaking of the English rule of construction just noticed, whereby heir at law and "my family" were held convertible terms, says: "The court in its anxiety to find out the meaning of the testator, has found out that *what he has said has the same meaning as if he had said nothing at all.*" The endeavor to reconcile or even to analyze the numerous conflicting decisions of the English courts respecting the meaning of the word under discussion, would be like that of threading the mazes of the Cretan labyrinth. We shall not attempt the task, but content ourselves with according to the words " and family" the same import which they bear in ordinary conversation, since there is nothing to indicate their use in a different sense. That Hiram Stephens was intended to take under the devise, no one questions, because he is expressly named; that his children would take is proved by Wylde's case and Terry's case, *supra*. But, as a matter of course, they, under our statute, (2 R. S. 1855, § 13, p.

357), would take merely as tenants in common with their father. We are clearly of the opinion that the wife is equally entitled to take, and that the word family will readily and naturally bear that construction, which includes her among the devisees. Executors of *White v. White*, *supra.* We have been cited to the case of *Arthur v. Weston*, 22 Mo. 378, as showing that the entire legal estate passed to Hiram Stephens. That case, however, establishes nothing of that sort, for that was one where a *deed* had been made whereby land was conveyed to "W. W. Phelps & Co.," and held that the deed vested the title in Phelps alone ; Mr. Justice Leonard in conclusion expressly stating : "Nor are we to be understood as declaring that the same rule would be applicable to a *devise* of real property, but the point decided is confined to the very case before us—a legal conveyance *inter vivos* of real property." And no doubt, that eminent lawyer, when using those guarded expressions, bore in mind the greater liberality of construction which is applied to wills ; they being supposed to be drawn *inops consilii.* Having thus ascertained that the wife, as well as the husband, is a partaker with him in that which the will confers, inquiry must be had respecting the quantity and nature of the interest of which the husband and wife became the recipient at the testator's death, and whether evidence was receivable to show who composed the family. These points will be considered in their order.

II. Husband and wife, at common law, to whom a grant or devise was made took *per tout et non per my*, and the survivor took the whole. 1 Bright Husb.

2. HUSBAND AND WIFE: estate in land.

and Wife, 25, and cases cited. This peculiar result arose from the legal identity of husband and wife, both being regarded as one person. Our statute has wrought no change in this particular, as has been expressly and repeatedly adjudged. *Gibson v. Zimmerman*, 12 Mo. 385 ; *Garner v. Jones*, 52 Mo. 68 ; *Shroyer v. Nickell*, 55 Mo. 264. Those adjudications were based on the following section: " Every interest in real estate granted or devised to two or

more persons, other than to executors or trustees as such, shall be a tenancy in common, unless expressly declared in such grant or devise to be in joint tenancy." 2 R. S. 1855, § 13, p. 357. This section has been in existence since 1835, and must govern this case. In 1865 the section received a modification, by striking out the words " as such" immediately after " trustees," and inserting " or to husband and wife." Gen. Stat. 1865, p. 443, § 12. Thus conforming legislative enactment to previously received judicial construction announced in *Gibson v. Zimmerman, supra.*

And when husband and wife are co-grantees or co-devisees with a third person, the last named takes one moiety and the husband and wife the other. 1 Bright H. & W. 27; Litt. § 291. If there are two other persons co-grantees or co-devisees, besides husband and wife, then the subject matter of the grant or devise is vested one-third in the husband and wife, and the remaining two-thirds in the other persons in equal proportions, and so on, in accordance with the number of persons entitled; the husband and wife always representing a single unit or integer of legal identity. In the case before us, as there were six children at the death of the testator, the husband and wife became together seized of one-seventh of the land devised. *Barber v. Harris*, 15 Wend. 615. And in this connection the enquiry becomes pertinent whether evidence regarding the members of the family, and of whom composed, was properly admitted; which point is next for consideration.

III. Although it is well settled that extraneous evidence is not received to vary, explain, contradict or control the terms of a will, 1 Redf. L. W. 597, § 41; yet it is equally well settled that evidence of surrounding circumstances, of the subject matter of the devise, and of the persons to be benefitted thereby is receivable, in order to place the court, so far as may be, in the situation of the testator, and, looking from his standpoint, to determine both the subject and objects of his bounty. Wigr. on W. 101, 109; Redf. L. W. 488, 587,

3. DEVISE: family: evidence.

597 and 598, 600, 621, 623; *D. and F. Miss. Soc. Appl.* 30 Pa. St. 425; *Blundell v. Gladstone*, 11 Sim. 467; *ex parte Hornby* 2 Bradf. Sur. 420. Sir James Wigram, in his learned work above cited, in his fifth proposition, p. 142, says, in reference to extrinsic evidence: "For the purpose of determining the object of a testator's bounty, or the subject of disposition, a court may inquire into every *material* fact relating to the person who claims under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator and his family and affairs, for the purpose ef enabling the court to *identify* the person or thing intended by the testator. The same, it is conceived, is true of every other disputed point, respecting which it can be shown that a knowledge of extrinsic facts can in any way be made ancillary to the right interpretation of the testator's words." To the same effect see 1 Greenlf. Ev., 13 ed., § 287, note 1. We, therefore, regard the ruling of the court correct in admitting such evidence, and supported alike by reason and authority; for to hold that such evidence is not admissible, would be equivalent to saying that the words "and family" are void for uncertainty. Such evidence must of necessity be received to identify those who are referred to in the will. *Wootton v. Redd*, 12 Gratt. 196; Introd., Wigr. on W. p. 12.

IV. If, as already seen, the husband and wife became seized in entirety of the undivided one-seventh of the 4. HUSBAND AND devised premises, the plaintiff is clearly enWIFE'S JOINT ES-TATE: execution. titled to a corresponding recovery of possession, if the husband had at the time of the sale, any interest therein susceptible to execution. The great current of authority affirms such susceptibility; going only so far as this, however, that if the wife survive her husband, she, as such survivor, will be entitled to the whole. This theory, that the husband is possessed of a vendible interest, has for its basis that the husband, *jure mariti* is entitled to the possession and usufruct of the wife's real estate during

marriage, which right suffers no diminution or abatement by reason of his own interest in land whereof both his wife and himself are jointly seized. *Ames v. Norman,* 4 Sneed, 692; *French v. Mehan,* 56 Pa. St. 286; *Child v. Bennett,* 19 Wis. 362; Freeman Co-T. and Par., §§ 73, 74; 1 Wash. R. P., 4 ed., 672; Bishop L. M. W. 622; *Stoebler v. Knerr,* 5 Watts 181.

There is also abundant authority enunciative of the kindred doctrine that a husband thus jointly seized with his wife, has absolute control of the property during the life of the wife and may make a valid lease during his life in his own name. *Torrey v. Torrey,* 14 N. Y. 430; make like lease whereon ejectment may be brought, *Jackson v. McConnell,* 19 Wend. 175; maintain ejectment in his own name, *Topping v. Sadler,* 5 Jones, N. C. 357; bring in his own name trespass *qu. cl. freg., Fairchild v. Chastelleux,* 1 Pa. St. 176; determine tenancy in his own name, and concurrence of wife not necessary, *Pollok v. Kelley,* Irish C. L. (N. S.) 367; has a sort of interest of his own, distinct from his wife, which interest he may convey. Bishop, L. M. W. § 621. A different result from that here announced, respecting the sale under execution of the husband's interest has been reached in Indiana. *Chandler v. Cheney,* 37 Ind. 408. But the court there, while correctly stating that at common law the husband had no tenancy by the courtesy in lands held in entirety, altogether ignores the important fact before adverted to, of his possessing during coverture, the absolute control over all property of the wife, and being entitled to the *possession and usufruct* of her land. Certainly no less right could attach by reason of his also occupying an attitude whereby if he proves survivor, he may acquire the *whole* estate. And an examination of the authorities cited in that case will scarcely support the position there assumed. *Rogers v. Grider,* 1 Dana, 242 surely does not, for it only adverts to the general doctrine, and holds that where an execution sale had occurred, the wife's right of survivorship would not be defeated. The case of *Roanes v. Archer,*

4 Leigh 550, but lightly considers the point of the vendibility of the husband's interest, and is based on *Scott v. Gibbon*, 5 Munf. 86, to which it refers, where it was expressly held that the husband, in consequence of an *antenuptial marriage settlement, had no vendible interest whatever.* Rorer on Judicial Sales, § 549, apparently gives support to the Indiana case, saying: " So no separate proceeding against one of them, during their joint lives, will, by sale, affect the *title* to the property as against the other one as survivor, *or as against the two during their joint lives."* The only authorities cited in the margin to uphold the text are *McCurdy v. Canning*, 64 Pa. Stat. 39, which is controlled by special statutory provision, and *French v. Mehan, supra,* which expressly recognizes the doctrine that the husband's interest is *vendible,* citing *Stoebler v. Knerr,* 5 Watts 181, and that the husband having the entire control of the estate during his life, may convey or mortgage it during that period. And even Mr. Rorer very guardedly says, in a note to the section referred to : " We may add here, that if a sale as against the husband on execution against him can affect the possession during the joint lives of the husband and wife, it can only be so upon the principle, that *during that time her posssssion is merged in his."* Search has been in vain for any common law authority giving color to the assertion that the husband cannot, by his own conveyance *alone,* pass a title which shall be good at least during his life (subject to defeat, as a matter of course, by the wife's survivorship.) On the contrary, in the old books, Rolle's Abr. Tit. Recovery, Pl. 4, and Piggot's Treat. of Com. Recov. 72, cited in *Robinson v. Comyns*, Cas. Temp. Talbot 164, " It is laid down that a husband seized jointly with his wife, whether by moieties or entireties, or seized only in right of his wife, may create an estate or *freehold during the coverture,* and thereby make a good tenant to the præcipe." Mr. Preston says, " This species of tenancy owes its qualities to the *unity* of the persons of the husband and wife. Each, in the intendment of law, has the

entirety; * * * each has a power of alienation over the entirety, subject only to the right of the other." To the same effect are, 1 Bright on Husb. and W. 26; 1 Prest. Convey. 54; 1 Co. Lit. 187a, 187b; .2 Greenl. Cruise 373; 1 Atk. 473; 2 Prest. Abstr. 43.

Mr. Justice Cowen in *Jackson v. McConnell*, 19 Wend. 175, after commenting on a number of authorities, among them *Doe v. H.* 8 Cow. 283, says that the husband alone can not *alien*; " the meaning is he can not alien the *entire* estate." In Bishop, Law Mar. Wom., Vol. 1, § 622, it is stated not only that the husband's interest in the land held by the entirety is vendible under execution, but that such sale takes from him all his estate, whatever it may be in the land. And in *Ames v. Norman, supra,* it is distinctly held that the purchaser at execution sale takes the entire estate if the husband survives the wife. As the facts presented by the record before us do not require it, it is unnecessary to give expression of opinion going to the full extent of the authorities just cited. We only hold, in the case at bar, that the husband's interest during his life at least, passed by reason of the execution sale, and that his wife surviving, took that whereof they had been jointly seized.

V. Nor do we regard the conclusion thus announced at all affected by the statute (2 W. S. §14, p. 935); and this 5. STATUTE CON- for the reason, that the statute is evidently de-STRUED. signed to prevent a sale under execution against the husband, where the wife holds the fee *in her own right*. This statute is in derogation of the common-law right of the husband, and therefore should receive a strict construction, in accordance with a familiar principle. A like view is taken of a similar statute in Tennessee, 4 Sneed, *supra*.

VI. Another reason occurs why the statute referred to is inapplicable. The right of the plaintiff accrued by rea-6. ATTACHMENT: son of the attachment levied long before the execution: in-tervening legisla- statute under consideration became opera-tion.

tive; this did not take place until August 1st, 1866, when the General Statutes of 1865, where § 14 first appears, took effect. The fact that the judgment and execution occurred at a subsequent period is not material, as it has been frequently decided, the execution sale relates to the levy of the attachment and creates from that moment a valid charge (*Huxley v. Harrold*, 62 Mo. 516, and cases cited), which could not be divested by any subsequently operative legislative enactment.

Inasmuch as the plaintiff was clearly entitled to a recovery of one-seventh of the estate devised, the judgment which accorded to him a lesser recovery must be reversed. The matter, however, in consequence of the death of the husband during the pendency of the cause in this court, is at present of no great practical importance. With directions that the lower court do take suitable action conformably to this opinion, and also regarding the rents and profits down to the period of the husband's decease, the judgment will be reversed and the cause remanded. All concur.                                    REVERSED.