[Sac. No. 887.    Department One. — October 11, 1901.]

In the Matter of the Estate of ABRAHAM BOOTH BEN-
NETT, Deceased. EMILY BENNETT MORRIS, named
EMMA MORRIS in Will, and JAMES H. BENNETT,
Appellants.    THEODORE A. CARMAN et al., Re-
spondents.

Will — Construction — Death of Legatee — Bequest to "Revert"
to "Children of the Family." — Under the will of a testator who
had never married, and had no family of his own, and whose father's
family had ceased to exist as such before the will was made, a pro-
vision that in case of the death of any legatee before distribution,
"the portion so bequeathed to such legatee shall revert to the fam-
ily of which such legatee is a member, share and share alike," the
word "revert" is not to be construed in the legal and technical
sense of "coming back" to its original position as part of the testa-
tor's estate, but in the sense of the word "go," and the "family"
referred to is that of the deceased legatee, and not that of which
the testator had been a member.

Id. — Meaning of "Family." — The word "family" is not a technical
word. It is of flexible meaning, which is to be determined from
the context and the subject-matter to which it relates, and depends
upon the particular circumstances of the case. In common par-
lance, it imports those who live under the same roof with the *pater-
familias;* and those who branch out and become members of new
establishments cease to be a part of the father's family, in the
common meaning of the word. The word may import parents with
their children, whether living together or not, or the offspring of
a common progenitor, if such intention is manifested from the con-
text.

Id. — Construction of Code — Death of Devisee or Legatee during
Life of Testator — Substitution — Power of Provision. — Section
1343 of the Civil Code, providing that "if a devisee or legatee dies dur-
ing the lifetime of the testator, the testamentary disposition to him
fails, unless an intention appears to substitute some other in his
place," only declares the effect of such death, where the testator
makes no provision for the contingency, and is not a limitation upon
his power to make such a provision, by devise or bequest over to
the children of the devisee or legatee.

APPEAL from a decree of the Superior Court of San Joaquin
County distributing the estate of a deceased person. Joseph
H. Budd, Judge.

The facts are stated in the opinion of the court.

Louttit & Middlecoff, for Appellant Emily B. Morris.

R. C. Minor, for Appellant James H. Bennett.

A. H. Ashley, Attorney for Carman Legatees, Respondents.

H. R. McNoble, Attorney for other Legatees and Heirs, Respondents.

HARRISON, J.—The question involved in this appeal is the construction to be given to one of the clauses of the decedent's will. The will is olographic, and dated March 1, 1895. By it the testator, after bequeathing five hundred dollars to a Mrs. Fanning, five hundred dollars to his half-brother, James Bennett, one thousand dollars to his half-sister, Emma Morris, and five hundred dollars to his niece, Alzadie B. Morris, gave the residue of his estate to his sister, Frances Ann Carman, of Hempstead, in the state of New York. After making this disposition of his estate, he added the following clause: "In case of the death of any of the legatees of my estate under this will before distribution, then and in that case the portion so bequeathed to such legatee shall revert to the children of the family of which such legatee is a member, share and share alike." The residuary legatee, Mrs. Carman, died October 31, 1897, after the making of the will, and during the lifetime of the testator, leaving eight children surviving her. The testator died April 26, 1899. The testator had had four brothers and sisters of the whole blood, who died prior to the making of the will, each of whom left issue now living. The brother and sister of the half blood named in his will are living, and issue of each of them is also now living, the niece named in the will being the daughter of the half-sister. The four specific legacies have been paid to the respective legatees, and by the decree of distribution the residue of the estate was distributed to the eight surviving children of Mrs. Carman. James H. Bennett and Emma Morris, the brother and sister of the half blood, have appealed, claiming that the whole of the residue should have been distributed to them.

In support of their appeal, it is urged that, under a proper construction of the will, it was the intention of the testator that his estate should go to the surviving members of his own family, rather than to his relatives in a more remote degree;

that by directing that in a certain contingency his bequests, including the residue, should "revert," he indicated his wish that this residue should "come back" to its original position as a portion of his estate, and thence go to the appellants as the only surviving children of the family of which the testator was a member.

Such a construction of the will, however, requires a transposition and substitution of words and clauses, which is not necessary, even if it were permissible. If the testator had used the word "go" instead of "revert," there would have been no room for the contention of the appellants; and it is much more consistent with the rules of interpretation to hold that he used the word "revert" with that meaning, than it would be to hold that by the phrase, "family of which such legatee is a member," he intended the family of which his father in his lifetime had been the head, and of which he and the appellants were the only surviving members. It is manifest that he did not use the word "revert" in any technical or legal sense. (See Civ. Code, sec. 768.) He did not intend that in the contingency named either of his bequests should fall into his general estate, but was designating the legatees who should be substituted for the one who might die before distribution. His declaration that it should revert to persons other than himself, indicates that the term was used merely to signify that they were the persons to whom he wished the property to be given. The legacy had never been the property of the children thus designated, and, consequently, could not technically revert to them, and his use of this word was merely an expression of his intention that it should "go" to them. In *Beatty* v. *Cory Universalist Society*, 39 N. J. Eq. 452, the will provided that in case of the death of the legatee before majority, the legacy should "revert back" to his other lawful heirs. It was held that by the term "revert" the testator meant "go to" the other heirs. The same construction was given to the word, in a will, in *Jiggetts* v. *Davis*, 1 Leigh, 368, and in *Bates* v. *Dewson*, 128 Mass. 334.

The provision substituting "the children of the family of which such legatee is a member," as the recipient of the legacy in case of the death of any of the designated legatees, is an awkward and inartificial expression, but is not incapable of construction. It must be borne in mind that this expression is not limited to the case now before the court, but was intended by the testator to apply to each of the legacies contained in

the will, and a very slight consideration will show that the construction contended for by the appellants would thwart the manifest intention of the testator in reference to some of these legacies. The construction of the phrase turns upon the meaning in which the word "family" is used therein. The meaning which is to be given to the word is to be determined by the context, and also from a consideration of the subject-matter to which it relates. Every case must depend upon its particular circumstances. Mr. Jarman says (Jarman on Wills, *941): "'Family' is not a technical word, and is of flexible meaning." Anderson's Law Dictionary defines the word: "In its modern comprehensive meaning, a collective body of persons living together in one house." It is sometimes used to include parents with their children, whether dwelling together or not. The word has also a broader and secondary meaning, which includes all the offspring or descendants of a common progenitor, but is not to receive this construction, unless such intention is manifested from the context. (*Dodge* v. *Boston and Providence etc. R. R. Co.*, 154 Mass. 299. See also *Bowditch* v. *Andrew*, 8 Allen, 339; *Bradley* v. *Andrews*, 137 Mass. 50; *Townsend* v. *Townsend*, 156 Mass. 454; *Smith* v. *Wildman*, 37 Conn. 384; *Wood* v. *Wood*, 63 Conn. 324; *Old People's Society* v. *Wilson*, 176 Ill. 94; *Hall* v. *Stephens*, 65 Mo. 670.[1]) In *Rex* v. *Darlington*, 4 Term Rep. 797, Lord Kenyon said: "In common parlance, the family consists of those who live under the same roof with the *paterfamilias*, — those who form, if I may use the expression, his fireside. But when they branch out and become the members of new establishments, they cease to be a part of the father's family."

In the present case the testator had no family of his own. He left the place of his childhood and came to California in 1849, and it does not appear that after that date he ever lived with any member of his father's family. He was never married, and for many years before his death lived in the household of Mrs. Fanning, one of the legatees, who was in no wise related to him. His father, mother, and stepmother, together with all of his brothers and sisters of the whole blood, had died many years before he made the will in question. His half-brother lives on Long Island, and his half-sister in San Francisco. Upon these facts it must be held that his father's family,

---

[1] 27 Am. Rep. 302.

of which he and Mrs. Carman had once been members, had ceased to exist, and was not the "family" referred to in the clause, "children of the family of which such legatee is a member," and that the appellants are not the children of the family referred to therein. As before the making of his will his father's family had ceased to exist, and Mrs. Carman had become the head of a new family embracing the eight children then living, it must be held that this was the family referred to in the clause, and that her children are the children to whom he intended that the bequest should go in case she should die before the distribution of his estate.

The provision in section 1343 of the Civil Code, that "if a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place," has no application. That section only declares the effect of the death of a legatee in case the testator makes no provision for such contingency, but is not to be construed as a limitation upon the power of the testator to make such provision. In the present case the testator has carefully provided for this contingency, and has thus taken the will out of the provisions of this section.

The order appealed from is affirmed.

Garoutte, J., and Van Dyke, J., concurred.