[L. A. No. 6614.   In Bank.—June 25, 1921.]

In the Matter of the Estate of HORTENSE E. BRIGGS, Deceased.   FORDYCE W. BRIGGS et al., Appellants, v. CHARLES T. BRIGGS, Respondent.

[1] ESTATES OF DECEASED PERSONS—WILL—BEQUEST OF RESIDUUM— LIMITATION OF ESTATE — DEATH OF LEGATEE WITHOUT ISSUE. — Where a testatrix bequeathed the *residuum* of her estate to her two married sons in equal parts, and then in the same paragraph of her will expressed the desire that in the event one of the sons, who was childless, died without issue, the one-half of his portion revert to the other son, who had living children and grandchildren, and one-half to be equally divided between her great grandchildren, her intention was that the childless son should take his share subject to the condition that if he died childless it should go to his brother and the other residuary legatees, it being the apparent intention of the testatrix to keep the *residuum* among her lineal descendants.

[2] ID.—CLAUSES OF PARAGRAPH—CLEAR AND DISTINCT BEQUEST.— Where a testatrix bequeathed the *residuum* of her estate to her two married sons in equal parts and in the second clause of the same paragraph of her will provided that in the event one of the sons, who was childless, should die without issue, she "desired" one-half of his portion to "revert" to the other son, the latter clause is not open to the objection that it is not clear and distinct since the word "desire" in connection with the words including "bequeath," used in the first clause expresses her testamentary intention equally as clear as the word "bequeath," and the word "revert" is merely an expression of intention that such part should "go" to the other son.

[3] ID. — DESIRE OF TESTATRIX — MANDATORY EXPRESSION. — Where a testatrix expressed her desire that if one of her two married sons to whom she bequeathed the *residuum* of her estate in equal parts should die without issue his share should go to the other son and her great grandchildren, the expression of her intention is to be regarded as mandatory.

[4] ID.—PROVISION IN EVENT OF DEATH WITHOUT ISSUE—DEATH AT ANY TIME.—Where a testatrix bequeathed the *residuum* of her estate to her two married sons in equal parts and in the second clause of the same paragraph of her will provided that in the event one of the sons, who was childless, died without issue, one-half of his portion should revert to his brother and the other one-half should go to the grandchildren of the testatrix, the gift over was not a substitutionary scheme in case the precedent gift

to the son lapsed by his death during the lifetime of the testatrix, since the expression "death without issue" had reference to death at any time.

APPEAL from an order of partial distribution of the Superior Court of Los Angeles County. John M. York, Judge. Reversed.

The facts are stated in the opinion of the court.

Harold M. Sawyer and Alfred T. Cluff for Appellants.

G. R. Freeman and Sarau & Thompson for Respondent.

LAWLOR, J.—This is an appeal by certain legatees of Hortense E. Briggs, deceased, from an order granting the petition of Charles T. Briggs, another legatee, for partial distribution.

Decedent died leaving a will in which she made certain bequests. The balance of her estate was left to her two adult sons, the said Charles T. Briggs and Fordyce W. Briggs, under the following clause, which constituted the fourth paragraph of the will:

"The balance of my estate I bequeath to my two sons Charles T. Briggs of Corona and Fordyce W. Briggs of Santa Ana, to be equally divided between them— In the event my son Charles dies without issue I desire one-half his portion to revert to my son Fordyce W. Briggs and one-half to be equally divided between my *Great Grandchildren.*"

The will was admitted to probate. In due course the said Charles T. Briggs petitioned the court for partial distribution to him absolutely of certain property of the estate under the said fourth paragraph of the will. The petition was granted and this appeal is taken from the order. The sole question presented on appeal is the proper construction of the said fourth paragraph of the will.

The contention of appellants is thus stated: "The fourth paragraph gives respondent a fee in half of the *residuum* of the property, but the gift over creates a conditional limitation on that fee, making the same a base or limited fee, subject to be terminated upon respondent's death without issue, and upon such termination the property vests in appel-

lant Fordyce W. Briggs, and in the great grandchildren of the testatrix living at the date of such termination.''

Respondent contends in effect that this is a misinterpretation of the fourth paragraph which, he insists, is to be read as two separate clauses. He claims that by this paragraph he is given an equal portion and an equal interest in the estate with Fordyce W. Briggs, and that on the death of the testatrix he took an undivided one-half of the estate in fee simple absolute. In support of this position he argues, first, that it was the intention of the testatrix that he should have an equal undivided one-half interest in the fee simple with Fordyce, and that she clearly states this intention in the first clause of the paragraph; second, that the second clause of the paragraph is contradictory, inconsistent, and repugnant to the first, and cannot be given effect because it is in opposition to the fee plainly given in the first clause; third, that the first clause of the paragraph is a clear devise and bequest, that the second clause is not equally clear and distinct, and that the first clause cannot be affected by inference or argument from other parts of the will, or by parts not equally clear and distinct—the second clause is indistinct because of the uncertainty of the meaning of the words ''desire'' and ''revert,'' and the uncertainty of what would be meant by ''his portion'' which would have to be paid over to the other legatees in case Charles should die childless; fourth, that the second clause is precatory and not mandatory; and, fifth, that the second clause is substitutive—that the gift over was intended as a substitutionary scheme in case the precedent gift to Charles lapsed; in other words, the expression ''dies without issue'' refers only to his death in the lifetime of the testatrix.

For the purposes of his brief respondent divides the paragraph into two clauses which he designates as ''Clause 1'' and ''Clause 2,'' respectively. It is upon this segregation of the paragraph that respondent bases his interpretation of the will. He claims that it was the intention of the testatrix he should have an equal estate in fee simple with Fordyce under the first clause, and that the second would not cut down the estate given by the first.

[1] In our opinion, when the entire paragraph is considered together it becomes plain that the intention of the testatrix was that Charles should take his share subject to

the condition that if he died childless it should go to Fordyce and the other appellants. Respondent's contention that the first clause shows the intention of the testatrix to be to give him a fee simple absolute ignores the rule that the intention must be gathered from a construction of the entire will. (*Adams* v. *Prather,* 176 Cal. 33, [167 Pac. 534]; *Colton* v. *Colton,* 127 U. S. 300, [32 L. Ed. 138, 8 Sup. Ct. Rep. 1164, see, also, Rose's U. S. Notes].) In interpreting a will all the parts are to be construed in relation to each other and so as, if possible, to form one consistent whole. (Civ. Code, sec. 1321.) It is unquestioned that, considered by itself, the first clause would show an intention to vest the fee to one-half of the *residuum* in Charles absolutely, but it is equally plain that the addition of the second clause shows the testatrix intended to limit the estate. This view finds support in the surrounding circumstances. Charles was fifty-five years of age and Fordyce was three years younger. Both were married. Fordyce had living children and grandchildren. Charles had been married about sixteen years and was childless. Considering these circumstances it might naturally follow that by the language used the testatrix intended to keep the *residuum* among her lineal descendants. Respondent argues that because she entertained feelings of equal affection for her two sons and always treated them alike in property matters, she intended to treat them alike in all respects at her death. She did provide that they should equally enjoy her bounty during their lives. The only difference was that she denied Charles the right to make testamentary disposition of the said property, but only if he died childless. It seems to us that the apparent intention to keep the *residuum* among her lineal descendants can account, as no other fact or circumstance does, for this distinction. Proceeding upon this theory the intention we have deduced from the will naturally follows. In our opinion the testatrix intended that the half of the *residuum* given to Charles was conditional upon his leaving children.

In support of his contention that the second clause is repugnant to the first, in that it is contradictory and inconsistent, respondent argues that the testatrix by the first clause created an absolute estate; that the second clause in cutting down the estate becomes repugnant to the first clause which creates it absolutely. We think the effect of the

second clause is not to cut down an absolute estate which may have been created by the first, but merely expresses one phase of her testamentary intention. Neither clause is complete within itself, but together they create a limited fee. The language employed clearly expresses the intention of the testatrix that Charles should take a fee in the property subject to a limitation or condition, and is not open to any other construction.

[2] Nor is the expression of the testatrix's intention contained in the second clause open to the objection that it is not "clear and distinct." In *Estate of Tooley*, 170 Cal. 164, [Ann. Cas. 1917B, 516, 149 Pac. 574], a similar question was presented. The will in that case read:

"I give all my property at my death to my daughter, Logan Mattie Tooley.

"If at her death she has neither husband or children I desire any property that may be left divided equally among my sisters and brother."                    ᵒ

Of the contention that the words of the second paragraph were not as clear and distinct as those of the first, and consequently could not cut down the distinct devise contained in the first, the court said: "In view of these authorities it cannot be said that the words of the second paragraph of the will are not equally clear and distinct as those of the first paragraph. We think no case can be found in which a will indicating a disposition of property by the word 'desire' or 'wish' has been held not to be sufficient to constitute a will. The meaning of the word, when used in such connection in a will, is as clear as that of any other word in the language."

In the case here, although the testatrix used the technical word "bequeath" in the first clause, the word "desire" used in the second, *in connection with the words she has used in the first,* equally well expresses her testamentary intention and is equally as clear as the word "bequeath."

While the estate could not technically "revert" to a third person, nevertheless the use of that word does not render the meaning of the second clause any less plain. In a similar case, where the word "revert" was employed, it was said: "The legacy had never been the property of the children thus designated, and, consequently, could not technically revert to them, and his use of this word was merely an expression of his intention that it should 'go' to them."

(*Estate of Bennett*, 134 Cal. 320, [66 Pac. 370].) The expression "his portion," referring to the property to be given over to the other legatees in case Charles should die childless, means the property he receives under the will, when such estate is determined by a consideration of the entire instrument. The fact that it is referred to as *his* portion does not destroy the condition, for the portion may be *his* and still be subject to the limitation imposed by the will.

[3] It is true that words in a will expressing a mere desire are to be considered as precatory if addressed to the legatee. On the other hand, if the wish is addressed to the law, or to the personal representative of the decedent, or stands alone as an expression of the testator's desires, the word is mandatory. (*Estate of Tooley, supra; Presbyterian Board etc.* v. *Culp,* 151 Pa. St. 467, [25 Atl. 117].) In this case the testatrix does not request the legatee to do anything. She wants the estate to go to Fordyce and her great grandchildren if Charles dies without issue, and she merely states that desire. The expression of intention must, therefore, be regarded as mandatory.

[4] The contention that the second clause is substitutive is based on section 1336 of the Civil Code, which declares: "Words in a will referring to death or survivorship, simply, relate to the time of the testator's death, unless possession is actually postponed, when they must be referred to the time of possession." In *Estate of Carothers,* 161 Cal. 588, 595, [119 Pac. 926], it was held: "It is important to notice that the rule as stated in the Civil Code applies only where there are words 'referring to death or survivorship, *simply*.' The will of Carothers does not refer to the death of William 'simply.' It refers to his death 'without issue,' a contingency which might never happen. We have no provision of our code declaring what the rule should be where the words refer to death upon a contingency. . . . If there is nothing in the context or in the surrounding circumstances to indicate either, [that the reference is to a death without issue before some particular time or event, or to a death at any time,] then the ordinary meaning of the words is that the reference is to death at any time it may occur, and that the happening or not happening of the contingency is to determine the result." The death of Charles, to effect the limitation of the estate, must be upon a contingency—he must die

without issue. The same contingency was declared in *Estate of Carothers, supra,* not to be death, simply, within the meaning of the Civil Code. There is nothing in the context or the circumstances here to indicate a contrary intention on the part of the testatrix, so the words must be taken to refer to death at any time.

Respondent has founded an argument upon a comparison of the will at bar with those in other cases, but in view of the interpretation we have given the paragraph herein, it will serve no purpose to further consider the point.

The order is reversed.

Shaw, J., Wilbur, J., Sloane, J., and Lennon, J., concurred.

ANGELLOTTI, C. J., Dissenting.—I dissent.

I am confident that if the testatrix could meet her holographic will clad in the construction given to it by the majority opinion, she would not recognize it. In any event, she would feel that she had been extremely inadequate in attempting to express her intention as to the disposition of her estate in such a manner that it would be carried into effect by the courts.

To me it seems perfectly clear from the words of the will and the circumstances under which it was made, that it was her intention expressed therein, that each of her two sons, who were her only children and heirs at law, should take as his own, absolutely and unconditionally, one-half of the residue of her estate (which was of the value of over one hundred and twenty-five thousand dollars and consisted almost entirely of personal property), after the payment of a two thousand dollar legacy to her "old home church"; and that the expressed desire contingent on the death of Charles without issue was nothing more than the expression of a mere wish or desire on the part of the testatrix intended to be and in effect addressed *to Charles himself,* to be complied with or not as *he* might determine. The effect of the decision is practically to give to Charles only a life estate in so far as any enjoyment or control by him of the property during his lifetime is concerned, for until the very moment of his death it cannot be determined with certainty that his interest amounts to anything more. If he does die

without issue, the estate bequeathed to him is ended. And all this in the face of the obvious desire on the part of the mother to divide her valuable estate (except for the two thousand dollar legacy) equally between her two sons, and the apparently clear and distinct bequest to them of "the balance of my estate . . . to be equally divided between them."

I am constrained to admit that in material respects the will here is the same as the will involved in *Estate of Tooley,* 170 Cal. 164, [Ann. Cas. 1917B, 516, 149 Pac. 574]. I endeavored in my opinion filed therein, in dissenting from the order denying a rehearing after decision in Department, to briefly state what I considered the basic fault in the Department opinion, and what I said there is equally applicable here, and sufficiently shows for all the purposes of a dissenting opinion my reasons for dissent herein.

Olney, J., concurred.

Rehearing denied.

Shaw, J., Lawlor, J., Lennon, J., and Sloane, J., concurred.

Angellotti, C. J., and Shurtleff, J., dissented.