[Sac. No. 1671. In Bank.—December 15, 1911.]

In the Matter of the Estate of ANDREW CAROTHERS, Deceased. JOHN E. WITHERSPOON, as Administrator with the Will Annexed of the Estate of Andrew Carothers, Deceased et al., Appellants, v. EARL D. WHITE, Respondent.

WILL — CONSTRUCTION — UNCERTAINTY — INTENTION—SURROUNDING CIRCUMSTANCES.—In case of uncertainty arising upon the face of a will, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made.

ID.—RULES OF CONSTRUCTION EMBODIED IN CODE—INTENTION OF TESTATOR CONTROLS.—The rule embodied in section 1322 of the Civil Code, that "a clear and distinct devise or bequest cannot be affected . . . by any other words not equally clear and distinct," like other rules of interpretation, is designed to aid in arriving at the intention of the testator as expressed in his will, and must yield to that intention when it appears with reasonable clearness from the words used.

ID.—WORDS REFERRING TO DEATH OR SURVIVORSHIP—RULE OF CONSTRUC-
TION OF CODE—DEATH UPON CONTINGENCY.—DEATH WITHOUT ISSUE.
—The rule of construction embodied in section 1336 of the Civil
Code, that "words in a will referring to death or survivorship, sim-
ply, relate to the time of the testator's death," etc., is applicable only
where there are words referring to death or survivorship, *simply*. It
is not applicable where the words refer to death upon a contingency,
as, for example, to death "without issue," and there is no provision
in our codes declaring what the rule should be where the words refer
to death upon a contingency.

ID.—DEVISE OF REMAINDER OVER UPON DEATH OF REMAINDERMAN WITH-
OUT ISSUE—GENERAL MEANING OF WORDS—REFERENCE IS TO DEATH
AT ANY TIME.—In the case of a devise, postponed to take effect upon
the termination of a particular estate, with a gift over in case of the
death of the remainderman "without issue," if there is nothing in
the context or in the surrounding circumstances to indicate the inten-
tion of the testator, then the ordinary meaning of the words is that
the reference is to death at any time it may occur, and that the hap-
pening of the contingency is to determine the result.

ID.—CONSTRUCTION OF WILL IN QUESTION—LIMITATION ON FEE CONDI-
TIONED UPON DYING WITHOUT ISSUE.—The circumstances surround-
ing the making of the will in question showed that the testator left
him surviving as his heirs at law his childless second wife, then aged
fifty-six years; a son, William, aged forty-two years and unmar-
ried; another son, John, aged thirty-nine years, having one child;
and a daughter, Elizabeth, aged forty-six years, who was married
and had three young children. At the time the will was executed the
testator was seventy-four years of age, was then very ill, and was
expected to die, and did die six days afterwards. By the terms of
his will he devised his farm, which comprised the bulk of his estate,
to his wife and his son William "during the lifetime of my said
wife, and at her death said land with all the improvements and pro-
ceeds thereof vests absolutely in and is the property of said William,
that in case said William dies without issue his property herein speci-
fied becomes the property of John, and at his death goes to Eliza-
beth." *Held,* that upon the prior death of the wife, the son, William,
did not become vested with an unconditional and unqualified fee, but
that the fee was limited upon the condition of his dying at any time
without issue, and that upon his so dying, subsequent to the death of
the wife, the property would pass to John and Elizabeth successively.

ID.—CHARGE OF LEGACIES ON PROPERTY DEVISED.—The fact that by a
subsequent clause of the will legacies aggregating fifteen hundred
dollars were charged upon the proceeds of the property devised, pay-
able at the death of the wife, does not compel the conclusion that the
testator supposed that his son William, if he were living, would then
have an indefeasible fee and that he must have intended that result.

APPEAL from an order of the Superior Court of Sacramento County for the partial distribution of the estate of a deceased person. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

White & Miller, Richards & Carrier, and Devlin & Devlin, for Appellants.

Wm. M. Sims, R. C. Van Fleet, Snook & Church, Mastick & Partridge, and W. B. Treadwell, for Respondent.

SHAW, J.—This is an appeal from an order of partial distribution of the estate of Andrew Carothers, deceased, to the respondent, Earl D. White.

The decision of the case depends on the meaning and effect of the last will of the deceased. After a clause giving certain specific personal property to his son, William P. Carothers, to his wife, Eleanor Carothers, and to one Joseph A. Lowry, respectively, the will proceeds with the portions here involved, which are as follows:—

"I also give and bequeath to my wife and William P. Carothers my entire farm with all improvements thereon located in the county of Sacramento County, state of California, during the lifetime of my said wife, and at her death said land with all the improvements and proceeds thereof vests absolutely in and is the property of said William P. Carothers, that in case said William P. Carothers dies without issue his property herein specified becomes the property of John Thomas Carothers, and at his death goes to Elizabeth Witherspoon.

"I further direct at the death of my said wife my daughter Elizabeth Witherspoon shall receive one thousand dollars proceeds from said property and May H. Lowry five hundred dollars."

The testator died on December 13, 1876, leaving surviving as his heirs at law his wife, Eleanor, and three children,—namely, William P. Carothers, John Thomas Carothers, and Elizabeth Witherspoon.

Eleanor, the wife, died on February 24, 1897. On February 14, 1898, William P. Carothers executed a deed purporting to convey an undivided one-half interest in the farm to said John

Thomas Carothers. On March 11, 1899, John conveyed to his wife, Kate A. Carothers, all of his right, title, and interest therein. On September 15, 1904, Kate conveyed to J. J. Burke a part of said farm, a small tract of four acres. This is the land in controversy. The respondent, Earl D. White, is the successor of Burke, and the undivided one half of the four acres was distributed to him, subject to a charge for the legacies to Elizabeth Witherspoon and May H. Lowry, in case they had not been paid previously. The claim of the respondent is that by the terms of the will, upon the death of the testator's wife, Eleanor, William P. Carothers became vested of the farm in fee, that his deed to John carried the undivided one half thereof to John in fee, and that by the subsequent transfers the respondent became vested of the fee in the undivided half of the four acres.

The appellants are the children of Elizabeth Witherspoon. She died in the year 1881. John Thomas Carothers died in the year 1899. William P. Carothers died on June 2, 1902, without issue. The claim of the appellants is that by the will William P. Carothers was given, first an estate in common with Eleanor Carothers for and during the lifetime of Eleanor, and secondly, a contingent remainder in fee, the condition being that in case he should die without issue the property should go to John Thomas Carothers for his life and that at the death of John it should go to Elizabeth Witherspoon. Their theory is that the estate of William terminated upon his death without issue, carrying with it all the subordinate estates conveyed by him, including that of John's wife and that of the respondent, and that as John died before the death of William, upon the death of the latter the entire estate in the farm became vested in the appellants as the heirs of Elizabeth Witherspoon, to whom the will in that event had devised it.

In case of uncertainty arising upon the face of a will, the testator's intention is to be ascertained from the words of the will taking into view the circumstances under which it was made. (Civ. Code, sec. 1318.) Assuming that the will is uncertain, the circumstances to be considered in this case are as follows: At the time he executed the will the testator was seventy-four years of age. He was then very sick, confined to his bed, and his death was expected soon. It was executed on

December 7, 1876, and he died six days afterward. Eleanor
Carothers was his childless second wife. She was then aged
fifty-six years. William P. Carothers was a bachelor, then
aged forty-two years, John was thirty-nine years old and had
one child then living. (She afterward died before the death
of John.)   Elizabeth Witherspoon was then forty-six years
old, was married, and had three young children. The farm
was his place of residence. It contained 158 acres and com-
prised the bulk of his estate. The will appointed William P.
Carothers and Eleanor Carothers as executor and executrix,
without bonds.

The respondent's theory is that the clause in the will which
reads as follows: "that in case said William P. Carothers dies
without issue his property herein specified becomes the prop-
erty of John Thomas Carothers, and at his death goes to
Elizabeth Witherspoon," refers solely to the death of William
without issue in the lifetime of the widow, Eleanor, so that
when he survived Eleanor he became vested of an uncon-
ditional and unqualified fee. Upon this theory a complete and
accurate statement of the intention of the testator would have
required the interpolation of an additional phrase, so as to
express it thus, the interpolated words being italicized: "that
in case said William P. Carothers dies without issue *during
the lifetime of my said wife,* his property herein specified be-
comes the property of John Thomas Carothers, and at his
death goes to Elizabeth Witherspoon."

The respondent, in support of this construction, advances
two propositions which he states substantially as follows: 1. A
clear devise of a fee will not be cut down by other expressions
or clauses contained in the will which do not with reasonable
certainty indicate the intent of the testator to cut it down,
and if such intent is not thus shown the subsequent clause will
be construed so as to make it consistent with the positive de-
vise, or, if necessary, it will be entirely disregarded. 2. Where
a devise is made to one in fee, with a devise over in case of his
death without issue, the words "death without issue" are to be
taken as relating solely to his death in the lifetime of the
testator, or, if the fee is in remainder after the termination of
an estate for life or years, then to his death prior to the end-
ing of the particular estate, so that if he survives thereafter
he will take an absolute fee.

1. The first proposition is embodied in section 1322 of our Civil Code. "A clear and distinct devise or bequest cannot be affected . . . by any other words not equally clear and distinct." The words, "and at her death said land with all the improvements and proceeds thereof vests absolutely in and is the property of said William P. Carothers," considered separately, clearly give William a fee simple estate. They are immediately followed, however, as part of the same sentence, separated only by a comma, by the words, "that in case said William P. Carothers dies without issue his property herein specified becomes the property of John Thomas Carothers, and at his death goes to Elizabeth Witherspoon." Passing the second proposition and assuming that this refers to the death of William at any time, this passage, so far as it imposes a limitation upon the fee, is as clear and distinct as the previous devise of the fee to William. The word "that" beginning the clause is obviously used in the sense of "but" or "provided that." The testator's intention is unmistakably declared to be that in the contingency mentioned, that is, William's death without issue, the farm should go to John and Elizabeth successively. The rule contended for, as in case of all other rules of interpretation, is designed to aid in arriving at the intention of the testator as expressed in his will, and it must yield to that intention when it appears with reasonable clearness from the words used. (*Burnett* v. *Piercy,* 149 Cal. 190, [86 Pac. 603] ; *Pavkovich* v. *Southern Pacific Co.,* 150 Cal. 46, [87 Pac. 1097].) The subsequent words are sufficiently clear to meet the condition of the rule, and they must be taken as providing a conditional limitation upon the fee previously devised, as they were manifestly intended to do.

It is suggested that these words are not sufficiently certain to comply with the rule because, when taken literally, they appear to give the entire fee in remainder to John, and it is insisted that if John had the fee it would go to his heirs at his death and not to Elizabeth. We do not think there is any foundation for this objection. While the form of the provision is not elaborate and the language is not particularly well chosen, its effect is plain if the entire clause is considered together. It can mean nothing else than that upon the death of William without issue, John should take, for and during his own life, whatever estates were given to William by the

previous clauses, and that upon John's death the entire re-
mainder would vest in Elizabeth, or her heirs if she were not
then living. If William's death had occurred during Elea-
nor's lifetime, of course the estates of John and Elizabeth re-
spectively, would have been in the undivided one half only,
while Eleanor lived.

2. The second proposition is expressed in the Civil .Code as
follows: "Words in a will referring to death or survivorship,
simply, relate to the time of the testator's death, unless pos-
session is actually postponed, when they must be referred to
the time of possession." (Sec. 1336.) In this case William's
possession of the fee was postponed until the death of Eleanor,
and therefore, if this rule should be applied, the words relat-
ing to his death would be taken to mean his death in the life-
time of Eleanor. This section of the code expresses what ap-
pears to be the general rule upon the subject at common law.
The respondent relies upon the following statement of the
rule by Mr. Underhill: "The intention of the testator in
providing for a devise over after giving a fee in absolute terms
is most likely to prevent a lapse; and if the devisee shall sur-
vive the testator, he will take an absolute fee simple in the
property devised to him, which will not be defeasible on his
subsequent death without issue, and the limitation over will be
disregarded." (1 Underhill on Wills, sec. 347.) The author,
in the next section, materially modifies this statement of the
rule by the following language: "The rule is extremely tech-
nical in its character. It does not apply where there are in-
dications, however slight, that the testator indicated a death
without issue occurring subsequent to his death. The rule
which construes death without issue to mean death without
issue prior to that of the testator is not favored by the courts.
The ages and conditions of the primary devisees may be ma-
terial in determining whether the testator meant death with-
out issue before or subsequent to his death. . . . In such a
case, *particularly where at the .date of the ·execution of the
will any of the primary devisees are unmarried,* it may fairly
be presumed that the testator had in contemplation a future
marriage and birth of issue, and that, intending to keep the
property in his family, he meant a death without issue to take
place after his death. If, therefore, the primary devisees
survive him, they take an estate in fee which is defeasible

upon their subsequent death without issue." (Sec. 437.) (The italics are ours.) In both these passages the author is discussing the effect of a devise over upon death without issue in cases where there is no intervening life estate to postpone the possession of the contingent remainder, and hence he speaks only of the effect of a death without issue before and after the testator's death. But manifestly, where there was such postponement, the same considerations would apply as to the effect of such death before and after the ending of the life of the testator. It is contended by both parties here that there is an irreconcilable conflict in the decisions of other jurisdictions upon the question whether words in a will referring to death *without issue* relate to the time of the testator's death or the time of actual possession if there is a postponement by reason of an intervening particular estate, or whether they relate to a death after the devise vests in possession, as well as before, and each claims that the weight of authority is in his favor. We have no decision on the subject in this state.

It is important to notice that the rule as stated in the Civil Code applies only where there are words "referring to death or survivorship, *simply*." The will of Carothers does not refer to the death of William "simply." It refers to his death "without issue," a contingency which might never happen. We have no provision of our code declaring what the rule should be where the words refer to death upon a contingency. With respect to cases of this kind, speaking of those in which possession is postponed by a particular estate, Mr. Underhill says: "The general rule is that, in the absence of clear evidence of a contrary intention, a devise over in case of death without issue in the case of a remainder, as with an immediate estate or interest, means a death *at any time, and not a death without issue during the life tenancy.* The devisees therefore take a remainder, whether vested or contingent, upon the death of the testator, but which becomes vested in possession and enjoyment only upon the death of the life tenant, and which is then defeasible on their subsequent death without issue." (Vol. 1, sec. 346, p. 465.) (The italics are the author's.) Mr. Jarman treats the subject at length by classes or heads. In one part he considers cases where the reference is to death "simply"; in another a class which he designates by the title, "death, with contingency," in which he includes

the words "death without issue." This latter class he again
divides into those where the estate is to vest immediately upon
the death of the testator, and those where the ultimate gift
is postponed to take effect after an intervening estate for life
or years. Speaking of those vesting immediately he says:
"The general rule is that where the context is silent, the words
referring to the death of the prior legatee in connection with
some collateral event, apply to the contingency happening as
well after as before the death of the testator." (2 Jarman on
Wills, 6 ed. 719, *p. 1596.) And in reference to the case of a
postponed gift to one, with a devise over in case of his death
on a contingency, he says: "It is settled, however, that in this
case, as well as where the original gift is immediate, the sub-
stituted gift will *prima facie* take effect whenever the death
under the circumstances described occurs." (Id. 725, *p.
1603.) In view of this well known classification of the differ-
ent varieties of testamentary gifts where death is referred to,
it is at least clear that in adopting section 1336, there was no
intention to provide a statutory rule for the cases where the
reference was to death with a contingency. We are therefore
left to construe the words of this will with the aid of such
light as the authorities afford, independent of section 1336.

A large number of cases are cited by the respective counsel
upon the question of the proper application of the words
"dies without issue." We do not deem it advisable to review
them. The above quotations from Jarman and Underhill
show that the text writers who have given close consideration
to the subject favor the theory that they should be held to
refer to death after as well as before the death of the testator
or life tenant, unless the context or circumstances show the
more limited meaning. A reading of the cases cited rather
leads to the conclusion that after all that may be said, the
only rule truly applicable to such expressions is that the inten-
tion of the testator is the primary object of search, and that it
is to be ascertained by considering the whole will in connec-
tion with the nature and character of the testator's estate and
the part of it affected, and such of the surrounding circum-
stances known to him as may tend to illustrate his meaning.
If all these indicate that the reference is to a death without
issue before some particular time or event, effect must be
given to the will accordingly. If, on the contrary, they show

an intention that death at any time was to bring about the result stated, then that effect must be given to the words. If there is nothing in the context or in the surrounding circumstances to indicate either, then the ordinary meaning of the words is that the reference is to death at any time it may occur, and that the happening or not happening of the contingency is to determine the result. Nearly all of the cases cited fall within one or the other of the first two of the alternatives just stated and they were, for the most part, really decided in that way, but in some of them the decision is reached by the arbitrary application of what was considered the correct rule of construction. This would probably account for much of the conflict.

Applying the principles of interpretation above stated, we find little difficulty in ascertaining the testamentary intent. When the testator gave William the remainder after the death of Eleanor, and then proceeded to declare what should become of the property if William should die without issue, he must have had in mind the fact that William was a bachelor forty-two years old and the possibility of his future marriage and the birth of children. It is more reasonable to suppose that he intended to preserve the estate to Elizabeth Witherspoon or her children, in case William left no issue, than that he merely desired to avoid a lapse if William died before Eleanor. If the former was his purpose, there can be no doubt that the qualifying clause was intended to limit the fee devised to William and referred to his death at any time.

We have also, in the will itself, more than a mere death upon contingency to point out the testator's meaning. The clause immediately preceding the reference to William's death, on its face gave William a remainder in fee in the farm. The farm was therein "specified" as William's property, and it was all to become "his" in possession upon the death of Eleanor. Knowing William's age and unmarried state, he then came to consider that William might die without issue after coming into possession of the fee. To provide for this apprehended contingency, he proceeded to declare that if William should die without issue "his property herein specified" should go to John for his life and then to Elizabeth. The provision would doubtless have been construed to apply to and include the unexpired life estate as well as the fee in remainder, in case

William had died before Eleanor, but it also shows that the testator was thinking of the property which would be "his," that is, William's, and that he referred to the death of William after the death of Eleanor and after he had come into possession of the remainder "specified" as his in the preceding clause of the sentence, as well as to his death before that event.

It is suggested that the last paragraph of the will, which gives legacies to Elizabeth Witherspoon and May H. Lowry payable at the death of Eleanor out of the proceeds of the farm, shows that the testator supposed that William, if he were living, would then have an indefeasible fee, and that he must have intended that result. The argument is that the payment of these legacies out of a mere defeasible fee would have been a burden on William greater than the testator can be supposed to have intended. We cannot see that this argument is of any force. When the testator made the will all the future possibilities were before him. If William had died without issue before Eleanor, leaving John surviving, John would have had a vested life estate in the remainder, beginning, as to one half, with the death of Eleanor. At her death the legacies would be payable and the burden upon John if he survived her, would assuredly be as great as it would have been upon William, had he survived Eleanor.

Our conclusion is that the estate of William was a fee defeasible upon his death without issue, and that as that event has occurred and John is also dead, the farm is now vested in the heirs of Elizabeth Witherspoon.

Upon a former submission of this cause, the foregoing opinion was filed and the order accordingly reversed. Upon petition of the respondent the judgment of reversal was vacated and a rehearing ordered for the purpose of giving further consideration to the questions involved. The cause was thereupon reargued and again submitted. Upon the further consideration we are satisfied with the opinion and conclusions heretofore announced, and we again adopt the aforesaid opinion as that of the court.

The order appealed from is reversed.

Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.

ANGELLOTTI, J., dissenting.—This appeal was first decided in the district court of appeal for the third appellate

district, where judgment was rendered affirming the order appealed from. Accompanying the judgment was the following opinion prepared by Mr. Justice Burnett:—

"This is an appeal from a decree of partial distribution to one Earl D. White of the estate of Andrew Carothers, deceased.

"Andrew Carothers died on or about the 13th day of December, 1876, and on January 8, 1877, his will was admitted to probate and his son, William P. Carothers, was appointed executor of the estate. By his last will and testament said Andrew Carothers disposed of the real estate herein involved as follows: 'I also give and bequeath to my wife and William P. Carothers my entire farm with all improvements thereon located in the county of Sacramento, state of California, during the lifetime of my said wife, and at her death said land with all improvements and proceeds thereof vests absolutely in and is at said death the property of said William P. Carothers, that in case said William P. Carothers dies without issue his property herein specified becomes the property of John Thomas Carothers, and at his death goes to Elizabeth Witherspoon.'

"The said wife, Eleanor A. Carothers, died on the 24th day of February, 1897. On the 14th day of February, 1898, said William P. Carothers conveyed by a good and sufficient deed to John T. Carothers an undivided one-half interest in said property. The latter, on the 11th of March, 1899, conveyed the same to his wife and she to J. J. Burke, on September 15, 1904. The said Burke died and on the 6th day of September, 1907, in the superior court of the county of Alameda, a decree of distribution was made and entered by which all of the interest of said Burke was distributed to said Earl D. White. On the 31st day of October, 1904, the said Burke had filed in the superior court of Sacramento County his petition for the distribution to him of the undivided one-half interest in this real property belonging to the estate of said Andrew Carothers, deceased. His death occurred before the hearing of said petition and his successor, the said Earl D. White, was regularly substituted, and to the latter the distribution was made.

"The said John Thomas Carothers died testate in the year 1899, without leaving issue, his said surviving widow, Kate A. Carothers, being the sole devisee of his estate.

"William P. Carothers was never married and never had any issue. He died intestate on June 2, 1902.

"The said petition for distribution was contested by John E. Witherspoon, as administrator with the will annexed of the estate of said Andrew Carothers, deceased, and by John E. Witherspoon, Andrew H. Witherspoon and Emma Witherspoon, the heirs at law and successors in interest of Elizabeth Witherspoon, a deceased daughter of the said Andrew Carothers, deceased.

"The position of respondent is that the fee, subject only to the life estate of the said Eleanor, vested in William at the death of the testator and that the provision in reference to the said John Thomas and Elizabeth are substitutionary only, or at least, that at the death of said Eleanor the said William became entitled to the fee simple absolute.

"To the contrary, it is insisted by appellants that the estate of said William P. Carothers was terminated by reason of his death without issue and that therefore the alternative provisions of the will to take effect in case of the happening of the contingency became operative. Hence, the claim of appellants to the fee as heirs of said Elizabeth whose death antedated that of the said William P. Carothers.

"Many questions of law suggested by the language of the will are discussed with great learning by the counsel for both parties. Their investigations have taken a wide range and it would seem that no relevant authority worthy of consideration has escaped attention. We deem it unnecessary, however, to follow the discussion in all its ramifications, as the determination of the controversy really hinges upon the construction of the phrase, 'dies without issue,' or rather upon the question whether that contingency is limited to any particular time.

"Respondent's position is stated as follows: 'Our contention is that after devising the property absolutely to William P. Carothers, and carving out of it a life estate for his wife, he bethought himself that in case William P. Carothers died in his own lifetime or in the lifetime of his wife there would occur a lapse and so he provided the substitutionary scheme. This is the only way in which the intention of the testator to convey an absolute interest in the property to the first taker can be possibly carried out.' In support thereof it is sub-

mitted: '1. A devise of testator's real estate to a person absolutely carries the fee simple absolute. A devise of the proceeds, rents and profits without limit passes the absolute fee. 2. A clear devise or bequest will not be cut down by other expressions or clauses contained in the will which do not with reasonable certainty indicate the intent of the testator to cut it down. The court will, when in doubt, justly prefer that construction of any subsequent clause which will make it consistent with the plainly expressed intention to devise or bequeath an absolute estate. 3. Under section 1336 of the Civil Code words in a will referring to death or survivorship relate to the time of the testator's death, unless possession is actually postponed, when they must be referred to the time of possession. This is the rule which must govern the construction of Andrew Carothers' will.'

"As opposed to this view it seems clear to appellants that 'The testator intended that William P. Carothers should have the remainder in the property after the expiration of the life estate, but that he would not have the same absolutely so that he could dispose of it to others. The testator wanted to keep the property in the family. If William had issue the property was to stay in his family. If he had not it was to go to the other children of testator.' The reasons for this conclusion are summarized as follows: '1. The natural meaning of the words "die without issue" is a death at any time. 2. The context of the will shows an intention to keep the property in his family and this can best be done by so construing the words. 3. The surrounding circumstances show that the testator must have intended the words to refer to death at any time. 4. Respondent's construction is based not on the testator's intention, but on harsh and technical rules of construction. That even in those states, which have adopted it, it is, according to respondent's own authority, Underhill, regarded as highly technical, often defeating the intention of the testator, not favored by the courts and departed from on indications however slight.'

"The fact is, however, that there is no difference of opinion —and there can be none—between counsel that the court's duty is to ascertain if possible from an inspection of the will the intention of the testator and to give effect to such intention if not in contravention of the law and that rules of con-

struction are prescribed to aid and not to embarrass or retard
the court in its effort to determine such intention. The rules
of construction suggested by counsel, indeed, are provided by
the code and the only question can be as to their application
to the will in controversy. Section 1318, Civil Code, is: 'In
case of uncertainty arising upon the face of a will as to the
application of any of its provisions, the testator's intention
is to be ascertained from the words of the will, taking into
view the circumstances under which it was made exclusive of
his oral declarations.' Of course, the surrounding circum-
stances are to be resorted to only in case of uncertainty in the
language used and for the purpose of ascertaining what the
testator intended by the words of the will. (*Estate of Tomp-
kins,* 132 Cal. 173, [64 Pac. 268].) The question as to the
period of time to which the words 'die without issue' should be
referred seems to be within the purview of the phrase 'as to
the application of any of its provisions,' and if it does not
appear from the language of the will, in view of other rules
of construction, what the testator intended by said con-
tingency, the surrounding circumstances, if of any significance
to remove the uncertainty, may be considered and accorded
the weight to which they seem to be entitled. (*In re Mackay,*
107 Cal. 308, [40 Pac. 558].)

"Again, in section 1322 we have the rule upon which re-
spondent relies with such confidence expressed as follows: 'A
clear and distinct devise or bequest cannot be affected by any
reasons assigned. therefor, or any other words not equally
clear and distinct or by inference or argument from other
parts of the will or by an inaccurate recital of or reference to
its contents in another part of the will.' But appellants con-
tend that equal effect must be given to section 1321, providing
that 'All the parts of a will are to be construed in relation to
each other, and so as, if possible, to form one consistent whole;
but where several parts are absolutely irreconcilable, the latter
must prevail,' and also to section 1329 that 'a devise of real
property passes all the estate of the testator, unless otherwise
limited.'

"In *Estate of Marti,* 132 Cal. 672, [61 Pac. 966], the im-
portance of said section 1322 is considered and it is therein
said: 'The testator had, by a previous clause in his will, given
and bequeathed to his wife "all the other property, real and

personal, and wherever situated of which I may die possessed."
This gift is explicit and without any words of limitation or
qualification. Considered by themselves, they create in her
an absolute estate in the property given by him. The authorities all agree that when an absolute estate has been conveyed
in one clause of a will, it will not be cut down or limited by
subsequent words except such as indicate as clear an intention
therefor as was shown by the words creating the estate.
Words which merely raise a doubt or suggest an inference will
not affect the estate thus conveyed, and any doubt which may
be suggested by reason of such subsequent words must be resolved in favor of the estate first conveyed. This rule of construction controls the rule that an interest given in one clause
of a will may be qualified or limited by a subsequent clause.'
(Citing cases.)

"There is no room for controversy as to the foregoing unless
possibly as to the accuracy of the statement that one rule
'controls' the other. The fact seems to be that in the case discussed by Mr. Justice Harrison the rule as to qualification or
limitation has no application. Nor is there any inconsistency
between the various sections of the code to which we have referred. If A in one part of his will by language free from
uncertainty devises real estate to B absolutely, and in a subsequent portion uses language of an uncertain import, but which
might be construed as a limitation or qualification of the fee,
no one would contend that B is entitled to less than the entire
estate in said property. But if A should devise real estate to
B and qualify the devise by an equally clear declaration that
B should have only a life estate, there would be no hesitation
in giving effect to the subsequent limitation. It follows necessarily from the principle that certainty is preferred to uncertainty and that the intention of the testator should be rendered operative as far as possible.

"In the light of the foregoing familiar principles, what
estate was devised to the said William P. Carothers? There is
no uncertainty as to the significance of this language: 'I also
give and bequeath to my wife and William P. Carothers
my entire farm with all improvements thereon during the lifetime of my said wife, and at her death said land with all improvements and proceeds thereof vests absolutely in and is
at said death the property of said William P. Carothers.' The

words seem to have been chosen carefully with a view of giving the wife and William a joint life estate and of vesting the fee beyond controversy in the latter. The legal effect of the words used, irrespective of the context, would not be changed as far as vesting the fee is concerned, if 'absolutely' and the phrase 'and is at said death the property of' had been omitted (sec. 1329, Civ. Code), but they are important as manifesting the intention of the testator to vest without qualification the complete title in William, postponed, however, as to its enjoyment until the death of the wife. An absolute estate is one 'that is free from all manner of condition or encumbrance.' It means 'complete, final, perfect, unconditional, unrestricted.' (Rap. & L. Law Dictionary.) 'The ownership of property is absolute when a single person has the absolute dominion over it, and may use it or dispose of it according to his pleasure, subject only to general laws.' (Sec. 679, Civ. Code.) 'The term "absolute ownership" hardly needs definition. An ownership liable to be divested by any contingency arising by any instrument creating the ownership is not absolute.' (*In re Howland's Will*, 75 App. Div. 207, [77 N. Y. Supp. 1025].)

"We must presume that the testator used language advisedly, in view of its universally accepted significance. And as a bequest to a person necessarily implies the condition that the devisee shall be alive at the time the bequest is to take effect, we find the testator expressing his intention that if the said William P. Carothers shall be alive at the time of the death of Eleanor, he shall be vested with the absolute dominion over said property, not liable to be divested by any contingency that may arise, provided if he dies without issue the property becomes the property of John Thomas Carothers. Is it not, therefore, the natural construction, to limit the operation of the qualifying contingency at least to the period prior to the death of said Eleanor? At any rate, there is some uncertainty as to whether the testator meant death 'without issue' at any time, and hence to give effect to the rule as to a clear devise we reach the conclusion that the testator had in view a substitutionary provision in case William should die before the testator or the said Eleanor.

"Again, the contrast between the perspicuous words of devise in reference to William P. Carothers and the somewhat obscure phraseology as to John Thomas Carothers and Eliza-

beth Witherspoon is worthy of notice. In the first instance there can be no doubt as to the testator's intention. He uses language apt and ample to vest in William the entire estate: 'I also give and bequeath.' But in case of William's death without issue 'his property herein specified *becomes* the property of John Thomas Carothers, and at his death *goes* to Elizabeth Witherspoon.' While the words 'becomes' and 'goes,' unembarrassed by the consideration of the clear devise of the fee to William, would probably be held sufficient to express the intention of the testator that the property 'becomes' the property of John Thomas and at his death 'goes' to Elizabeth, yet it is manifest that in one case the intention is entirely free from doubt, but in the other, at least somewhat obscure and uncertain. I think it is reasonably clear that the testator had in view the death of Eleanor as to the point of time when all uncertainty should be removed as to the character of the estate vested in the devisee. This conclusion seems to be confirmed by the last devise of one thousand dollars to Elizabeth Witherspoon and five hundred dollars to May H. Lowry to be received 'at the death of my said wife.'

"If we had no other guide than the decisions of the courts to prescribe the limits of the phrase 'death without issue' it would be difficult to reach a conclusion. The expression has indeed received judicial exposition in many jurisdictions. It is asserted in one of the briefs that more than one hundred cases dealing with this question have been cited by each party herein. Many of these decisions are irreconcilably conflicting. In some instances, however, the phraseology is somewhat different and the conflict is, therefore, more apparent than real. For example, sometimes the devise is to A, and in case of his death to B. Death is not a contingency, but a certainty, and as it is apparent in such a case that the testator had in view a possible contingency it is hardly open to controversy that he contemplated the death of A in his lifetime. But 'death without issue' introduces an additional element and renders the question less free from doubt, although the difference is ignored in some of the decisions.

"But confining our attention to the expression before us, it is apparent that the cases are hopelessly at variance, as may be seen by a reference to the following from the many that have been examined.

"The question is elaborately and learnedly discussed and many authorities reviewed in *Fowler et al.* v. *Duhme et al.*, 143 Ind. 248, [42 N. E. 623], wherein it is declared: 'Another rule is that the law so favors the vesting of estates and is so adverse to the postponement thereof that they will be held to vest at the earliest possible period in the absence of a clear manifestation of the intention of the testator to the contrary. While this rule has usually been declared with reference to the vesting of remainders, it is nevertheless declaratory of the policy of the law which would prefer certainty rather than contingencies, and which would deny force and effect to an uncertainty raised by doubtfully expressed contingencies instead of resorting to slight circumstances and rendering them effective to defer the vesting of estates or make their vesting contingent. This policy should not be relaxed when inquiry is directed to the force of words asserted to dismantle an estate in fee devised by apt words. . . . Another rule, and that which is of the greatest significance in the construction of the will before us is, as said in *Wright* v. *Charley*, 129 Ind. 257, [28 N. E. 706], "that where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator coupled with a devise over, in case of his death without issue, the words refer to a death without issue during the lifetime of the testator and that the primary devisee surviving the testator takes an absolute estate in fee simple." This rule may be said to be almost if not entirely free from conflict in the decisions and there is no doubt of its adoption in this state and that it is supported by the vast weight of authority'—citing on page 261 of 129 Ind. [42 N. E. 627] a long list of cases.

"On the other hand, the view urged by appellants is strongly upheld by the supreme court of the United States in *Britton* v. *Thornton*, 112 U. S. 532, [28 L. Ed. 816, 5 Sup. Ct. 294], in the following language: 'When indeed a devise is made to one person in fee and "in case of his death" to another in fee the absurdity of speaking of the one event which is sure to occur to all living as uncertain and contingent has led the courts to interpret the devise over as referring to death in the testator's lifetime. (2 Jarman on Wills, Ch. 48; *Briggs* v. *Shaw*, 9 Allen, (Mass.) 516; Lord Cairns in *O'Mahoney* v. *Burdett*, L. R. 7, H. L. 388, 395.) But when

the death of the first taker is coupled with other circumstances which may or may not ever take place, as for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect according to the ordinary and literal meaning of the words upon death under the circumstances indicated, at any time, whether before or after the death of the testator.'

"The question has been brought ·to the attention of our supreme court several times, but I think it can hardly be said to have been positively adjudicated.

"In *Jewell* v. *Pierce*, 120 Cal. 82, [52 Pac. 133], it is said: 'The construction which these words in a will should receive has been decided differently in different states, but has never been determined in this state.' The court, however, declined to decide the question, holding that it was not necessary to a decision of the cause.

"The language construed in *Estate of Alexander*, 149 Cal. 146, [9 Ann Cas. 1141, 85 Pac. 308], involves a different contingency from the one before us. The court, though, refers to a limitation over in case of death as follows: 'A devise to A with a limitation over in case of his death vests an absolute estate in A, unless he dies during the testator's lifetime. (Citing cases.) Similarly a gift to various persons "or the survivors of them" refers to those surviving at the death of the testator. The Civil Code of this state provides (sec. 1336) that "words in a will referring to death or survivorship, simply, relate to the time of the testator's death, unless possession is actually postponed when they must be referred to the time of possession." But the above authorities as well as many more that might be cited show that the same rule exists universally irrespective of any statute.' Whether the court would have made any distinction between a limitation over 'in case of death' and one 'in case of death without issue' does not appear, nor was it necessary to decide the question, although some of the cases cited with approval hold that the phrase death without issue relates to death in the lifetime of the testator. Moreover, for other reasons stated in the opinion, it seems clear that the testator intended the conditional limitaion 'if she remains unmarried' to apply at the time of the testator's death.

"In the *Estate of Barclay*, 152 Cal. 753, [93 Pac. 1012],

allusion is made to the subject as follows: 'The only provision in the will under which S. C. Blackinton could possibly be deprived of this property was one to the effect that in case one or more of the children should die their share was to be divided among the remaining children "unless they have heirs." This provision apparently referred only to such a death as might occur before the death of the testator (Civ. Code, sec. 1336), but in any event it could not apply to S. C. Blackinton's interest, for she left a child surviving her as well as her husband.'

"I think, therefore, that respondent is not justified in saying that by the foregoing decisions in this state the question is foreclosed as to whether the words 'dying without issue' are substitutionary merely or that the issue here is determined by said section 1336, but gathering the intention of the testator from the whole instrument, the only reasonable construction, in my opinion, is opposed to the theory that death at any time without issue was contemplated.

"Appellants also contend that an important feature here is the precedent life estate in favor of the said William P. Carothers. This would be of moment if it were not followed by the devise to him of the absolute fee.

"The said provisions in reference to William and Eleanor express as clearly as language can the intention that they should have the life estate until the death of Eleanor and then the fee should vest in William. Of course, no one would contend that William's life estate would continue after he was vested with the fee. Therefore appellants make a wrong application of the quotation from *Fowler* v. *Ingersoll*, 127 N. Y. 472, [28 N. E. 471], to the effect that 'This rule (holding that the words of contingency are substitutionary merely) has no application when the first devisee or legatee takes a life estate and is applied only when the prior gift is absolute and unrestricted. . . . And many cases could be cited where the courts, having construed the prior estate to be less than the absolute fee have held that the words of contingency referred to a death whenever it may happen.'

"Instead of devising a life estate to said William, the testator, after using language that carries such an implication, hastens to express in the most positive and unequivocal manner his purpose to vest the entire estate in William, subjecting

its possession, as we have seen, to the life interest of Eleanor.

"The fact that the testator died within a week after the execution of the will is not of sufficient moment to affect the result. The argument is that since he must have been under a sense of impending death and William was of the age of 42 and unmarried, it is most improbable that the contingency mentioned could have been contemplated as occurring prior to the testator's death. But the force of the contention is entirely nullified by the construction which refers the said contingency to the time of the death of Eleanor. Besides, there is no positive evidence that the testator believed that he was about to die. It is true that he was quite ill. He was suffering from an ailment that had afflicted him periodically for ten years. But at any rate, conceding that he felt that the end was near, this is only a circumstance to be considered with other circumstances in case of doubt, and in view of the language of the will expressing so emphatically the purpose to vest an unqualified estate in William, should not be given the weight claimed by appellants.

"As we construe the will there is no occasion for the application of the rule preferring the latter in case of conflicting provisions. Holding that there is a clear devise of the fee to William and that the contingency is confined either to the death of the testator or of Eleanor, we find harmony rather than inconsistency in the provisions in controversy."

I believe that this opinion correctly disposes of the questions presented on this appeal, and that the order should be affirmed for the reasons therein stated. I therefore dissent from the judgment.

Sloss, J., and Melvin, J., concurred.