[Civ. No. 3881.   Second Appellate District, Division Two.—December 15, 1922.]

In the Matter of the Estate of MARY A. HAMON, Deceased.

[1] TRUSTS—DEGREE OF CARE REQUIRED—LOAN ON VALUELESS PROPERTY—LIABILITY.—A trustee must use at least the degree of care which an ordinarily prudent person would in connection with the transaction involved; and in this proceeding to test the propriety of the action of a trustee under a will in loaning trust funds and taking real estate claimed to be valueless as security the trial court was justified in concluding that an ordinarily prudent person would have prevented the making of the loan and that the trustee did not exercise reasonable care and diligence and was therefore bound to make good the loss which would accrue to the trustee's estate.

[2] WILLS—LEGACY TO NEPHEW—RIGHT TO POSSESSION—CONSTRUCTION.—Where a will gives the residue of the estate of the testatrix to her niece and nephew in equal shares, and in a subsequent clause provides that the share going to the latter shall be paid to him on his thirtieth birthday, in case he is not married before the age of thirty years, and further states that it is the wish and desire of the testatrix that at her death the share coming to said nephew shall be placed in the hands of a named trustee, and the same put at interest, and the interest paid semi-annually to said nephew up until the date of his marriage, or in case he is not married, until his thirtieth birthday, when in either case the entire share coming to said nephew shall be paid to him without reservation of any kind whatsoever, a further provision in a separate paragraph of said clause that if said nephew "dies without issue, his share is ·to go to my niece," must be held to constitute a provision for the disposition of the legacy in question in the event of said nephew dying without issue before the occurrence of the events giving him the right to receive the legacy.

[3] TRUSTS—SETTLEMENT OF FINAL ACCOUNT—JURISDICTION OF COURT—JUDGMENT.—Upon the settlement of the final account of a trustee under a will and the termination of the trust, pursuant to the provisions of section 1699 of the Code of Civil Procedure, it is the duty of the court to make all orders necessary to entirely invest the beneficiary with possession, title, and all required evidences of title to the property determined to be rightfully his upon distribution of the trust estate; and where the trustee, without having exercised reasonable care and diligence, loaned the trust funds, taking valueless real estate as security, the

court has jurisdiction to order that the beneficiary assign the mortgage to the trustee and deliver the assignment to the clerk of the court and that thereupon the trustee pay to the beneficiary the amount which the court finds due him.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge. Affirmed.

The facts are stated in the opinion of the court.

Tanner, Odell & Taft for Appellant.

D. H. Laubersheimer for Respondent.

CRAIG, J.—The appellant, Ada Miriam Parker, was appointed executrix of the will of Mary A. Hamon, and also a trustee to receive certain property devised thereunder and to manage it as directed by the will. The will was probated and in due time the court made its final decree of distribution by which one-half of the property was distributed to Ada Miriam Parker individually, and the other half, consisting of $3,695.14 in cash and small items of personal property, to her as trustee for Percival James Langdon. She loaned the money held in trust upon real estate security. A more detailed statement will be made of this transaction later. However, this mortgage was subsequently foreclosed and the appellant, at the foreclosure sale, as trustee, bought the property for $5,079.57, being the full amount of the principal, interest, judgment, and costs. The trustee reported to the court under section 1699 of the Code of Civil Procedure, and prayed for her discharge. Thereupon Langdon appeared and filed objections to the report on the ground that the real estate security was valueless and also of alleged negligence on the part of the trustee in making the loan. Upon the hearing the trial court sustained the objections to the report and ordered the mortgage representing the loan to be reassigned to Ada Miriam Parker, and directed that she pay the cash legacy received by her as trustee with interest to the beneficiary Langdon. Findings of fact were made and judgment rendered as above indicated and from this judgment the trustee Ada Miriam Parker appeals.

The first ground of appeal, and the one most strongly urged, is that the evidence is insufficient to justify the find-

·ings that said trustee was grossly and willfully negligent
in making said loan in that she did not exercise ordinary
care and diligence in the execution of her trust, or in ascertaining the value, character, or location of said land prior
to making said loan; that said land had no commercial
or market value at the time said loan was made; nor had it
any commercial or market value since; that said trustee
could have ascertained the value, character, and location of
said land prior to making said loan had she exercised any or
ordinary care or diligence in the execution of her trust, and
similar findings concerning the trustee's purchase of the
property at the foreclosure sale. The facts relating to
this matter as they appear without substantial conflict are
as follows: One Muncy was the first person to speak to the
trustee, Mrs. Parker, concerning the loan; he informed her
that J. P. Grantz and Mildred Grantz desired a loan upon
a plot of ground consisting of 320 acres in Kern County.
From Muncy, whom she had known for a period of thirty
years, the trustee secured her principal information concerning the property. In one part of her testimony she said,
"I took Mr. Muncy's word for it." She also received reports of three other persons, Ryder, Smith, and Boxrund,
but she knew nothing of these men except what Muncy told
her. She did not talk with Mr. Grantz until after the loan
was made. A written report was made by Rider, Smith,
and Boxrund stating that the land in question was "arable,
fertile soil and all tillable," and placing an appraised value
at twenty-five dollars per acre upon it. Grantz made a
written application for the loan in which he stated that the
land was of a cash value of twenty-five dollars per acre.
The papers were approved by the trustee's attorney and she
testified that she relied upon his judgment as well as upon
that of Muncy's. Grantz furnished a certificate of title
showing ownership in him and Mildred Grantz, his wife.
Mrs. Parker made no investigation concerning Ryder, Smith,
Boxrund or Grantz. She testified that after the loan was
made Grantz paid some interest and then sold the land to
one Knowles, who assumed the mortgage and kept up the
interest for a time.

It appears from the evidence that previous to the making of the loan Muncy had purchased the land for five
dollars per acre from a railroad company. Witnesses called

by Langdon testified that the land is typical mesa desert land covered by sagebrush, yucca, greasewood, etc.; that it is impossible to place water on it by a practical pumping lift; that it was unimproved and had never been tilled; that it was not worth more than $2.50 per acre at the time the loan was made and that the value was the same at the date of the hearing. One witness testified that the land was practically worthless and that its only value would be for speculative purposes.

Before loaning the money Mrs. Parker was informed by Muncy where the property was located. Although it does not appear that she knew the true situation, it was shown at the hearing that Muncy and Ryder were the original purchasers of the land. That Grantz was practically only a dummy in the transaction. The deed was taken in his name and he executed a mortgage and immediately deeded the property in blank and delivered the deed to Muncy. Smith, one of the men who made the written report to Mrs. Parker, testified on the trial that it is very difficult to borrow money on raw desert land without water and that in commercial circles such property is not considered a good security.

It can hardly be doubted that Muncy and his associates misled the trustee and induced her to loan a substantial sum of money on commercially valueless property. To anyone at all informed concerning conditions in the desert region of this state it would be known that land situated as this was without water or any practical way of securing it has little or no market value and is not to be regarded as safe security for a loan without at least the lender subjecting it to a most careful scrutiny. [1] A trustee must use at least the degree of care which an ordinarily prudent person would in connection with the transaction involved. (Pomeroy's Equity Jurisprudence, sec. 1070.) The trial court was justified in concluding that ordinary prudence would have prevented the making of this loan and that the trustee did not exercise reasonable care and diligence and was therefore bound to make good the loss which would accrue to the trustee's estate.

[2] The appellant further contends that the trial court erred in directing the trust money to be given to Langdon in absolute ownership. It is claimed that under the will of Mary A. Hamon, Langdon received only an estate

analogous to a fee, terminable upon his decease without issue; that his estate is a contingent one unless and until he marry and have issue.

The sections of the will involved are the sixth and eighth. They are as follows: "Sixthly, I give, devise and bequeath to my nephew, Percival James Langdon, and to my niece, Ada Miriam Parker, all the rest, residue and remainder of my estate, being the money on hand or in the bank, and all mortgages due me, to be divided equally between them, share and share alike. Eighthly, It is my wish and desire that the share going to my nephew Percival James Langdon, shall be paid to him on the day of his marriage, or on his 30th birthday, in case he is not married before the age of thirty years, and it is my further wish and desire that at my death the share coming to my nephew Percival James Langdon, shall be placed in the hands of a trustee hereinafter named, and the same put at interest, and the interest paid semi-annually by said trustee to said Percival James Langdon up until the date of his marriage, or in case he is not married, until his 30th birthday, when in either case the entire share coming to said Percival James Langdon shall be paid to him without reservation of any kind whatsoever."

While the will is not free from ambiguity, the intent of the testator is expressed with reasonable clearness, as follows: That after disposing of certain specific articles the residue of the testator's estate is directed to be divided equally between Langdon and Mrs. Parker; that the legacy to Langdon be not delivered to him until his marriage or arrival at the age of thirty years; that upon the happening of either of these events he should receive all of his share without reservation, and lastly, that should he die before marriage and the birth of issue, or before his thirtieth birthday, his share should go to Mrs. Parker.

Two elements were contemplated by the testator: First, the interest bequeathed Langdon. This is designated in the sixth clause of the will and again in the latter part of the eighth clause; second, the time of delivery of the legacy.

This is found in the eighth clause, and in a separate paragraph of the same clause it is provided: "if said Percival James Langdon dies without issue, his share is to go to my niece," etc. Grammatically and logically this qualification

applies to the main subject matter of the section in which
it is contained. As so read, it must be held to constitute
a provision for the disposition of the legacy in question in
the event of Langdon dying without issue before the oc-
currence of the events giving him the right to receive the
legacy.

The most extreme construction that can be placed upon
this sentence by way of qualifying Langdon's estate is that
even though he might marry, should he die before his
thirtieth birthday without issue the legacy would go to
Mrs. Parker. Having given an absolute estate, it will not
be presumed that any later words were intended to qualify
it further or in any particular not clearly expressed or
necessarily implied. It must be supposed that the testator
associated the idea of the birth of issue with marriage.
There is no logical connection between the consideration of
birth of issue and the event of Langdon reaching his thir-
tieth birthday. If it be held that Langdon's estate is de-
feasible to this extent it would avail the appellant nothing,
because it was stipulated during the trial that he had
arrived at his thirtieth birthday. Upon the occurrence of
this event his estate became absolute regardless of the birth
of issue.

The legal principles governing the construction of these
sections of Mary A. Hamon's will are not in serious doubt.
It is elementary that in all such cases the single object of
inquiry is the intent of the testator. After considering va-
rious sections of our Civil Code bearing upon the matter,
and in interpreting a will where the words "dies without
issue" were pivotal in the determination of its meaning, the
supreme court in the *Estate of Carothers,* 161 Cal. 588 [119
Pac. 926], concludes that the "only rule applicable to such
expressions is that the intention of the testator is the pri-
mary object of search." *Estate of Tooley,* 170 Cal. 164
[Ann. Cas. 1917B, 516, 149 Pac. 574], is clearly distinguish-
able from the instant case. In the former the provision of
the will made no statement of the estate devised except that,
having given "all of my property" to Mattie Tooley, it
directed that "if at her death she has neither husband or
children" it should be divided among other heirs. The case
of the *Estate of Carothers,* 161 Cal. 588 [119 Pac. 926], is
apparently more nearly in point. By the will the testator

devised his farm to his wife and son William "during the lifetime of my said wife, and at her death said land with all the improvements and proceeds thereof vests absolutely in and is the property of said William, that in case said William dies without issue his property herein specified becomes the property of John, and at his death goes to Elizabeth." It was there held that, upon the prior death of the wife, the son William did not become vested with an unconditional and unqualified fee, but that the fee was limited upon the condition of his dying at any time without issue, and that upon his so dying subsequent to the death of the wife the property would pass to John and Elizabeth, successively.

It must be noted that the language which apparently vests the estate absolutely in William is directly qualified. As the opinion puts it, the words vesting the property absolutely are *immediately followed,* however, *as part of the same sentence, separated only by a comma,* by the words, *"that in case said* William P. Carothers dies without issue his property herein specified becomes the property of John Thomas Carothers, and at his death goes to Elizabeth Witherspoon."   (Italics ours.)

In the will being interpreted by us the estate to Langdon is devised absolutely in the sixth section, and the provision directing that it shall go to someone else if he dies without issue is contained in an entirely different and distinct section.   Thus, while in the *Estate of Carothers* the entire clause being construed was not "a clear and distinct" bequest, in the instant case we have such a bequest of an absolute estate to Langdon.   Hence, section 1322 of our Civil Code providing that "A clear and distinct devise or bequest cannot be affected . . . by any other words not equally clear and distinct," is relevant.   Had the language limiting the estate devised to William been totally disconnected from that giving him an unqualified estate, and had such qualifying language upon a consideration of both words and context been susceptible of a construction which would have permitted the provision for an absolute estate to stand, it is apparent that the estate devised to William P. Carothers would have been held an absolute one.   Certainty is preferred to uncertainty.   Mary A. Hamon left no uncertainty in her devise of an absolute ownership of one-half of the

residue of her estate, including the money here involved, to Langdon. That residue was bequeathed to Mrs. Parker and to him share and share alike. The most that can be said of the clause in the other section involved is that it creates an uncertainty as to whether the testator intended the words "dies without issue" to refer to death before the testator, or death before Langdon's marriage, or before his thirtieth birthday, or to death at any time. To hold that it means death at any time would place a higher value on uncertainty than upon certainty as a goal in interpretation. Nor is this a case within the scope of section 1321 of the Civil Code, in which it is provided that where there are irreconcilable provisions in a will, the latter must be adopted. These provisions are not irreconcilable.

We are not unmindful of the provision of section 1318 of the Civil Code that in the case of uncertainty arising upon the face of a will as to the application of any of its provisions the circumstances under which the will was made are to be looked to in ascertaining the intention of the testator. The circumstances shown by this record are of no great value. There is nothing to indicate that Mary A. Hamon had a greater affection for one of her residuary legatees than for the other. Mrs. Parker was already a married woman, hence the reason which constrained the testator to attach a provision concerning marriage to her legacy to Langdon would have no place in her bequest to Mrs. Parker and its absence indicates nothing. These two legatees were related in the same degree to their deceased ancestor. There is some authority for the proposition that where a primary legatee is unmarried, and an absolute legacy is followed by a limitation over, if the legatee die without issue, there is a presumption that the testator means the limitation to refer to death at any time. However, this inference is less strong where the primary legatee is young than where he is advanced in age. In the former event there would be more reason to suppose that the testator anticipated the likelihood of the legatee marrying and having issue before the termination of the particular estate and therefore the presumption would be more probable that death without issue was intended by Mary A. Hamon to have reference to Langdon reaching his thirtieth birthday, for he was apparently less than twenty-four years of age.

On the whole, there is nothing in the circumstances tending to indicate any different intention on the part of the testator than that which is shown by the wording of the will itself.

[3]     Another ground upon which appellant assails the judgment is the claim that the court had no jurisdiction to make the order that Langdon assign the mortgage to the trustee and deliver the assignment to the clerk of the court and that thereupon the trustee pay to Langdon the amount which the court found was due him. It is asserted that the power of the court was limited to finding the facts and settling the account as to its amount and the items that should be credited or not credited to the trustee, as shown by the report. *McAdoo* v. *Sayre,* 145 Cal. 344 [78 Pac. 874], construing the same code section here under consideration, expressly holds that the court upon final settlement at the termination of the trust has power to direct the trustees to turn over the property to the persons found to be entitled thereto. The same decision goes on to say that not only has the court such authority, but it is its duty to make all orders necessary to entirely invest the beneficiary with possession, title, and all required evidences of title to the property determined to be rightfully his upon distribution of the trust estate. Cases cited by the appellant not in accord with *McAdoo* v. *Sayre* were decided before the enactment of section 1699 of the Code of Civil Procedure, under the authority of which the appellant asked the court to grant her discharge.

For the foregoing reasons the judgment appealed from is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 13, 1923.

All the Justices concurred.