[Civ. No. 3207.   Fourth Dist.   Feb. 1, 1943.]

GEORGE T. MUSSON, as Trustee, etc., Plaintiff and Respondent, v. CHARLES EDWARD FULLER, Appellant; DONALD EDWIN HUHN, Defendant and Respondent.

Newby & Newby for Appellant.

J. L. Mack and Robert Mack Light for Respondents.

MARKS, J.—This is an appeal in an action for declaratory relief from a judgment construing the terms of a declaration of trust and decreeing that Donald Edwin Huhn owned a two and one-half per cent of the corpus of the trust and is entitled to the income therefrom.

Henry Fuller and Helen Day Fuller were husband and wife. Under date of March 31st, 1922, they established a trust with themselves as trustors and Charles Edward Fuller as trustee.

The entire net income of the trust was to be paid to Henry Fuller during his lifetime. After his death twenty-five per cent of the net income was to be paid to Helen Day Fuller and the balance to various other beneficiaries. The controversy before us arose under the following paragraph of the declaration of trust disposing of the net income after the death of Henry Fuller:

"Ten (10%) per cent. thereof to May P. Fuller (widow of Harry Ephraim Fuller) during her natural life, and upon her death, to Josephine, Stella, Kenneth and Ruth Fuller, the four children of said May P. Fuller and Harry Ephraim Fuller, share and share alike, or to the survivor of them, if they or either of them die without issue, share and share alike; or if said children leave issue, to said issue shall be paid the proportion of said percentage that would have been

received by the parent of said issue, if he or she had survived, share and share alike.''

Under date of January 13th, 1923, the trustors modified the terms of the trust making its provisions disposing of the net income of the estate control the disposition of its corpus.

Henry Fuller and Helen Day Fuller died prior to 1926.

From a statement in one of the briefs it is probable that Henry Fuller predeceased his wife. May P. Fuller died in 1926, leaving surviving her four children, Josephine, *Stella,* Kenneth and Ruth Fuller. *Stella* Fuller (Huhn) died leaving surviving her, defendant and respondent Donald Edwin Huhn, her minor son.

On May 9, 1938, Charles Edward Fuller appointed plaintiff trustee of the trust estate. Plaintiff accepted the trust and since then has acted as such trustee.

Charles Edward Fuller purchased the interests of Josephine, Stella, Ruth and Kenneth Fuller in the trust estate, which interests they conveyed to him. The agreed statement of facts recites that they believed they had sold and he believed he had purchased a full ten per cent in fee of the corpus of the trust and not merely life estates; that he paid the full value of the ten per cent of the fee of the corpus of the trust.

The controversy between the parties arose over the proper distribution of two and one-half per cent of the net income of the trust estate. Charles Edward Fuller claims to be entitled to the ten per cent of the net income from that portion of the trust estate which he had purchased. Donald Edwin Huhn claims that his mother Stella Fuller Huhn had a life estate in two and one-half per cent of the corpus of the trust; that this estate terminated on her death and that he succeeded to it.

As conflicting claims were made on the trustee for this two and one-half per cent of the money to be distributed the trustee brought this action to secure an interpretation of the paragraph of the declaration of trust which we have quoted. The trial court held that Stella Fuller Huhn had a life estate in two and one-half per cent of the corpus of the trust which terminated on her death and descended to her son Donald Edwin Huhn.

If Stella Fuller Huhn had a life estate only, that is all she could sell and convey to Charles Edward Fuller whose

right to receive the net income from the two and one-half per cent interest of the trust would terminate on her death. Therefore the important question presented for decision is the proper interpretation to be placed on the paragraph of the declaration of trust which we have quoted.

The construction contended for by Charles Edward Fuller would require the pertinent part of the paragraph to read: To the four children of May P. Fuller, "share and share alike, or to the survivor of them, if they or either of them die without issue *during the lifetime of May P. Fuller,*" the italicized portion being added to the language used by the trustors.

The construction for which Donald Edwin Huhn contends would substitute "at any time" for the italicized words in the foregoing paragraph.

A similar question was presented to the courts of this state in *Estate of Carothers,* 161 Cal. 588 [119 P. 926], where the following clause of a will was interpreted:

"I also give and bequeath to my wife and William P. Carothers my entire farm with all improvements thereon located in the county of Sacramento County, State of California, during the lifetime of my said wife, and at her death said land with all the improvements and proceeds thereof vests absolutely in and is the property of said William P. Carothers, that in case said William P. Carothers dies without issue his property herein specified becomes the property of John Thomas Carothers, and at his death goes to Elizabeth Witherspoon."

The testator died on December 13, 1876, leaving surviving him, his wife Eleanor and three children, William P. Carothers, John Thomas Carothers and Elizabeth Witherspoon. Eleanor died on February 24, 1897, and on February 14, 1898, William P. Carothers conveyed a one-half interest in the farm, which included the property in litigation, to John Thomas Carothers. By mesne conveyances an undivided one-half interest in the property involved passed to Earl D. White. The question decided was whether Earl D. White or Elizabeth Witherspoon was entitled to distribution of this property. The decision of this question required a determination of the exact estate taken by William P. Carothers under the will.

In discussing the law applicable the court quoted the following from Underhill on Wills:

"The general rule is that, in the absence of clear evidence of a contrary intention, a devise over in case of death without issue in the case of a remainder, as with an immediate estate or interest, means a death *at any time, and not a death without issue during the life tenancy.*"

It was further said:

"Applying the principles of interpretation above stated, we find little difficulty in ascertaining the testamentary intent. When the testator gave William the remainder after the death of Eleanor, and then proceeded to declare what should become of the property if William should die without issue, he must have had in mind the fact that William was a bachelor forty-two years old and the possibility of his future marriage and the birth of children. It is more reasonable to suppose that he intended to preserve the estate to Elizabeth Witherspoon or her children, in case William left no issue, than that he merely desired to avoid a lapse if William died before Eleanor. If the former was his purpose, there can be no doubt that the qualifying clause was intended to limit the fee devised to William and referred to his death at any time."

The court reversed the portion of the decree of distribution which awarded the property to White. Three of the justices dissented.

The same question was again considered in *Estate of Briggs*, 186 Cal. 351 [199 P. 322], in interpreting a paragraph of a will reading as follows:

"The balance of my estate I bequeath to my two sons Charles T. Briggs of Corona and Fordyce W. Briggs of Santa Ana, to be equally divided between them—In the event my son Charles dies without issue I desire one-half his portion to revert to my son Fordyce W. Briggs and one-half to be equally divided between my *Great Grandchildren.*"

During the course of probate Charles T. Briggs petitioned to have half the property distributed to him in fee. The petition was granted and an appeal was taken from the decree. The question at issue was the exact estate bequeathed to Charles.

In holding that the paragraph of the will created a conditional limitation on the estate bequeathed to Charles, it was said:

"In our opinion, when the entire paragraph is considered together it becomes plain that the intention of the testatrix

was that Charles should take his share subject to the condition that if he died childless it should go to Fordyce and the other appellants. . . .

"The contention that the second clause is substitutive is based on section 1336 of the Civil Code, which declares: 'Words in a will referring to death or survivorship, simply, relate to the time of the testator's death, unless possession is actually postponed, when they must be referred to the time of possession.' In *Estate of Carothers*, 161 Cal. 588, 595 [119 P. 926], it was held: 'It is important to notice that the rule as stated in the Civil Code applies only where there are words "referring to death or survivorship, *simply*." The will of Carothers does not refer to the death of William "simply." It refers to his death "without issue," a contingency which might never happen. We have no provision of our code declaring what the rule should be where the words refer to death upon a contingency. . . . If there is nothing in the context or in the surrounding circumstances to indicate either, [that the reference is to a death without issue before some particular time or event, or to a death at any time], then the ordinary meaning of the words is that the reference is to death at any time it may occur, and that the happening or not happening of the contingency is to determine the result.' The death of Charles, to effect the limitation of the estate, must be upon a contingency—he must die without issue. The same contingency was declared in *Estate of Carothers, supra*, not to be death, simply, within the meaning of the Civil Code. There is nothing in the context or the circumstances here to indicate a contrary intention on the part of the testatrix, so the words must be taken to refer to death at any time."

The decree of partial distribution awarding Charles one-half of the property in fee was reversed. Two of the justices dissented.

The same question was again considered under very similar provisions of a will in *Estate of Zeiger*, 21 Cal.App.2d 154 [68 P.2d 730]. Of course the District Court of Appeal followed the two decisions of the Supreme Court from which we have just quoted. We must also follow those decisions.

We therefore conclude that as Stella Fuller Huhn had a child she only took a life estate in two and one-half per cent of the corpus of the trust. Therefore she could convey

to Charles Edward Fuller only a like life estate in that portion of the trust, which life estate terminated on her death. The estate then passed to Donald Edwin Huhn.

The trial court awarded the attorney for the trustee a fee of $100, which, with the costs, was ordered to be paid out of the $176.57 accrued income on two and one-half per cent of the trust which was awarded to Donald Edwin Huhn. Charles Edward Fuller urges that this was error. As Fuller has no interest in this portion of the trust estate he is not injured by this portion of the judgment and cannot complain of it. The minor has not appealed.

Furthermore, the agreed statement of fact signed by the attorneys for all parties contains the following stipulation:

"That by reason of such adverse claims, it has been necessary for the plaintiff to file this proceeding and submit the above-entitled matter to the decision of the Court for declaratory relief, incurring in that behalf the usual costs of such proceeding and the reasonable fees of his attorney, Robert Mack Light, Esq., in and about the prosecution and presentation of the same."

Under this stipulation the attorney's fees were properly awarded.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 2, 1943. Edmonds, J., and Schauer, J., voted for a hearing.